UNITED STATES of America,
Plaintiff–Appellee,

v.

Marco Antonio PALACIOS–MARTINEZ,
Defendant–Appellant.

No. 87–3617.

United States Court of Appeals,
Fifth Circuit.

April 27, 1988.

**90**

Robert F. Barnard, Asst. Federal Public Defender, New Orleans, La., for defendant-appellant.

Patrice Harris and Curtis Collier, Asst. Attys. Gen., John P. Volz, U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before THORNBERRY, WILLIAMS and DAVIS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellant, Marco Antonio Palacios–Martinez, appeals his conviction for illegal entry into the United States following deportation pursuant to 8 U.S.C. § 1326, charg-

ing alleged defects in the deportation proceedings forming the basis of his conviction. We affirm.

## I.

Appellant, a citizen of Guatemala, was arrested on criminal charges on March 11, 1987, in New Orleans. Investigation led to appellant's indictment on April 24, 1987, for being illegally in the United States after having been deported without having first received the consent of the Attorney General to reapply for admission. 8 U.S.C. § 1326.[1] Immigration and Naturalization Service records showed that appellant had been deported on three previous occasions: September 9, 1975, January 6, 1976, and August 11, 1978.

Prior to trial, appellant filed a motion to dismiss the indictment based on the alleged invalidity of the previous deportation orders and proceedings. At the hearing held in reference to the motion to dismiss, appellant alleged that at all three of the previous group deportation hearings he was either not advised of all his rights he was waiving by consenting to be deported or that the waiver he made of those rights was not the result of a considered or intelligent decision based on sufficient information imparted by the Immigration Judge. More specifically, appellant alleged that no one had advised him that he could remain out on bond pending appeal of his deportation order and have his deportation suspended during that period.

Appellant claimed that he was thus presented with the "stark and inaccurate" choice of languishing in jail while he waited for an appeal or of being deported so he would be set free. This claim was made although he had been informed of his right

---

1. 8 U.S.C. § 1326 reads:
§ 1326. **Reentry of deported alien**
Any alien who—
(1) has been arrested and deported or excluded and deported, and thereafter
(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to

such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.

to bond pending the hearing. So he knew and understood the bond process but he did not request bond after the deportation order. Appellant, nevertheless, claimed his consent to being deported and foregoing an appeal was the result of coercion.[2] Appellant claimed his waivers of his rights were, therefore, invalid because the waivers were made unintelligently, unknowingly, and under coercion.[3] Appellant also made a general attack against the en masse character of the deportation proceedings, claiming he was never told individually about various rights or asked individually whether he was waiving them. He asserted the Immigration Judge told the entire group of aliens about these rights and then asked the group as a whole whether they understood them and wished to waive them.

■ After hearing the testimony of appellant and examining a transcript of the 1978 deportation hearing,[4] the district court denied appellant's motion to dismiss on July 8, 1987. After a one day jury trial on July 9, 1987, appellant was found guilty. On August 12, 1987, the district court sentenced appellant to two years in prison. Appellant now appeals the denial of his motion to dismiss and his conviction.

## II.

■ The Supreme Court in *United States v. Mendoza–Lopez,* —— U.S. ——, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), established that an alien who is being prosecuted under 8 U.S.C. § 1326 for illegal entry following deportation may in certain circumstances assert in that criminal proceeding a due process challenge to the underlying deportation order. Two distinct but related requirements, however, must

be met before an alien can prevent his previous deportation from being used as the basis for a conviction under 8 U.S.C. § 1326. First of all, the alien must show that the deportation hearing had been fundamentally unfair. In *Mendoza–Lopez,* the government accepted for purposes of the appeal to the Supreme Court that the alien's deportation hearing in that case had been fundamentally unfair. As a result, the *Mendoza–Lopez* opinion focused on whether a collateral attack on a deportation proceeding should *ever* be permitted, and, if so, under what circumstances should such a collateral attack be permitted. The holding of the Court established the second requirement which is that a collateral attack on a deportation hearing should be allowed if, in addition to being fundamentally unfair, the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the deportation order. Such a requirement is legally sound: a collateral attack on the deportation order should not be permitted, even if the deportation hearing had been fundamentally unfair, if there was an opportunity for effective direct judicial review of the deportation order. The Court in *Mendoza–Lopez* held that judicial review of the deportation order had been effectively eliminated in that case through failure of the judge to refer to it and to answer adequately questions regarding relief from deportation. As a result, the deportation order could not be used as the basis for a conviction under 8 U.S.C. § 1326.

The government conceded in *Mendoza–Lopez* that the alien's deportation proceeding had been fundamentally unfair. The record shows that in appellant's hearing

---

**2.** Appellant also alleged he was not told at the previous deportation hearings that the government bore the burden of proof at the hearing and that he need not prove whether or not he was deportable and could remain silent.

**3.** Appellant conceded that at the deportation hearings, the Immigration Judge told the aliens that they could be represented by an attorney, could present evidence, could cross-examine any witnesses, and could appeal their deportation orders.

**4.** The government was able to procure a transcript for only the 1978 deportation hearing although it was relying on all three deportations to form a basis for the 8 U.S.C. § 1326 conviction. Only one prior deportation is necessary for an 8 U.S.C. § 1326 conviction. We stress, however, that the lack of transcript availability clearly does not invalidate use of a prior deportation to establish the deportation as an element necessary to prove the crime. Whatever papers and oral testimony exist may well serve adequately to accomplish the collateral review described in Part II of this opinion.

none of alleged defects in the earlier deportation proceeding deprived appellant of a fundamentally fair hearing. *See Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). *Cf. Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (introduction of coerced confession); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of right to counsel); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed.2d 749 (1927) (adjudication by biased judge). In evaluating a criminal trial, the threshold for establishing that the trial was fundamentally unfair is quite high. The standard for evaluating a civil proceeding like deportation to establish the foundation for a criminal offense should be no lower.

■ Appellant's alleged defects even if assumed to be true do not rise to the level of being fundamentally unfair thereby depriving him of due process. Failure to ensure that a potential deportee knows and fully understands each and every one of his rights under I.N.S. regulations is not a deprivation of fundamental fairness. The transcript of the 1978 hearing shows that the Immigration Judge informed those aliens present of their basic rights, including the right to counsel and the right to appeal the order. The deportees were asked if they understood these rights. Appellant's attempt to characterize the waiver of his right to appeal as being somehow coerced because he was not expressly told of the possibility of being free on bond pending appeal is unconvincing. Also the judge specifically determined that none of the deportees were eligible for relief from deportation. Finally, we find no fundamental unfairness in the en masse nature of the deportation hearing. Appellant was informed of his basic rights, as were all the aliens in the group, and he had the opportunity to exercise those rights. Furthermore, the transcript of the 1978 deportation hearing indicates that each alien at the hearing was queried individually by the Immigration Judge as to the facts of his deportation. Appellant exhibited his understanding of the process at that time.

Having found that appellant's 1978 deportation hearing was not fundamentally unfair, we need not determine whether alleged defects at the 1978 deportation hearing effectively eliminated appellant's right to obtain judicial review of that proceeding. *United States v. Saucedo–Velasquez,* 842 F.2d 832 (5th Cir.1988). Appellant's 1978 deportation therefore can serve as a basis for his conviction under 8 U.S.C. § 1326.

### III.

■ Appellant also claims the district court erred in the criminal trial in allowing a government witness to testify regarding an admission made by appellant during the 1978 deportation hearing. Appellant's attempt to characterize this as the improper use of an involuntary intrajudicial confession is unconvincing. The witness read a statement made by appellant admitting he was a native and citizen of Guatemala from the transcript of the 1978 hearing. The government elicited this information during redirect examination of their witness after appellant's lawyer during cross-examination asked a series of questions suggesting that appellant was actually from Cuba and therefore may have been improperly deported. The government's evidence was clearly admissible in response to appellant's attempt to confuse the jury and undermine the validity of the previous deportation order. *United States v. Walker,* 613 F.2d 1349, 1353 (5th Cir.), *cert. denied,* 446 U.S. 944, 100 S.Ct. 2172, 64 L.Ed.2d 800 (1980) *and* 446 U.S. 955, 100 S.Ct. 2925, 64 L.Ed.2d 813 (1980). *Cf. United States v. Archer,* 733 F.2d 354 (5th Cir.), *cert. denied,* 469 U.S. 861, 105 S.Ct. 196, 83 L.Ed. 2d 128 (1984) *and* 469 U.S. 862, 105 S.Ct. 198, 83 L.Ed.2d 130 (1984); *United States v. Doran,* 564 F.2d 1176 (5th Cir.1977), *cert. denied* 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978) (cases applying the "invited error" doctrine).

AFFIRMED.

THORNBERRY, Circuit Judge, concurring specially:

The court concludes in this case that the defendant's deportation hearing was not

fundamentally unfair. As a result, it declines to inquire whether the defendant was denied the right to judicial review of the order of deportation. I believe that Supreme Court precedent requires us to make such an inquiry. Consequently, I cannot join the court's opinion.

I agree with the court that *United States v. Mendoza–Lopez*, —— U.S. ——, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) provides the standard for resolution of this appeal. I also agree that, under that standard, the defendant cannot obtain relief. I disagree only with the court's interpretation of the case.

In the court's view, *Mendoza–Lopez* sets forth a two-part test: a defendant challenging a prior deportation must prove first that his deportation hearing was fundamentally unfair, and second that, "in addition to being fundamentally unfair, the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review...." *Ante*, at 91. The court properly notes that "the threshold for establishing [fundamental unfairness] is quite high." *Id.*, at 92. Indeed, the court's listed examples of fundamental unfairness —the introduction of a coerced confession, complete denial of the right to counsel, and adjudication by a biased judge—are, I am confident, so obviously wrong that they rarely appear. The result of the court's formulation, consequently, is that most cases will be decided on the ground that there was no fundamental unfairness, and the question of the right of judicial review will be left unresolved.

In my view, however, *Mendoza–Lopez* provides no support for an independent standard of fundamental fairness completely divorced from the question of judicial review. Instead, the Supreme Court analyzes the entire collateral attack problem in the context of judicial review. The Court endorses a single test: whether the violations as a whole amounted to a denial of judicial review. 107 S.Ct. at 2156. If they did, then the deportation cannot be used in the criminal case.

Unquestionably, *Mendoza–Lopez* is somewhat confusing in its discussion of fundamental fairness. The issue of fundamental fairness originally arose in the case because of a finding by the Court of Appeals that Mendoza–Lopez's deportation proceeding lacked fundamental fairness. The Supreme Court said that it accepted the Court of Appeals' finding. *Id.* The Court, however, never explicitly stated just what role that finding played in the resolution of the case. Thus, this court certainly cannot base its interpretation on any express language in the Supreme Court's opinion.

In addition, however, several passages in the opinion seem to say unequivocally that the denial of the right of judicial review is, by itself, sufficient to prevent the government from making use of the deportation proceedings. For example, the Court said that it "decline[d] at this stage to enumerate which procedural errors are so fundamental that they may functionally *deprive the alien of judicial review,* requiring that the result of the hearing in which they took place not be used to support a criminal conviction." *Id.* at 2155 n. 17 (emphasis added). The Court then noted that, while deportation proceedings are civil, and thus require procedures less stringent than in criminal cases, certain errors "could operate, under some circumstances, *to deny effective judicial review* of administrative determinations." *Id.* (emphasis added). Similarly, the Court said, "If the violation of respondents' rights.... *amounted to a complete deprivation of judicial review* of the determination, that determination may not be used to enhance the penalty for an unlawful entry under § 1326." *Id.* at 2156 (emphasis added). Finally, the Court summarized:

Because respondents were deprived of their rights to appeal, and of any basis to appeal since the only relief for which they would have been eligible was not adequately explained to them, the deportation proceeding in which these events occurred may not be used to support a criminal conviction, and the dismissal of

94

the indictments against them was therefore proper.

*Id.* at 2157.

These passages, in my opinion, demonstrate a different view of due process violations of the right to judicial review than the one put forward in the court's opinion. Rather than setting forth a two-part test with distinct requirements of fundamental unfairness and a denial of judicial review, the entire focus of the Supreme Court's opinion was on the denial of judicial review. The Court saw this denial as the wrong that prevented the use of the deportation order in the criminal proceeding.

It is possible to argue, of course, that the Supreme Court placed its focus on the denial of judicial review only because the government had conceded that the deportation hearing lacked fundamental fairness. Thus, one might argue that if a deportation hearing is fair, *Mendoza–Lopez* should not bar its use in a criminal case merely because of a technical defect in the right of judicial review. The Supreme Court's language, however, cannot really be reconciled with the view that due process denials of the right of judicial review can amount only to technical defects. Instead, everything the Court says reflects the idea that a denial of the right of judicial review is so important that the government ought not to use the results of the flawed administrative proceeding as part of a criminal offense.

The essence of due process, after all, is fairness to the accused. If the government acts unfairly by denying an accused's right to judicial review, the accused should not as a result suffer additional burdens. The accused does suffer such burdens if a deportation for which direct review was denied can be used against him in a later criminal case.

The court's theory—that providing the accused with judicial review *now* completely remedies the failure to provide judicial review *then*—seems to me flawed. The court's framework allows collateral review only of defects of fundamental fairness, and not of other defects, short of that strict standard, that might have prejudiced the

defendant's case. It is obvious that many defects which might cause reversal on direct appeal, such as insufficiency of the evidence, would not rise to the level of fundamental unfairness.

Finally, I note the Supreme Court's concern that "[e]ven with this safeguard [of judicial review], the use of the result of an administrative proceeding to establish an element of a criminal offense is troubling." *Id.* at 2155 n. 15. This provides an additional reason to examine closely such administrative proceedings, and to refuse to allow proceedings that are defective because of the denial of judicial review to be used in a criminal offense.

I do not believe that this defendant can demonstrate a denial of judicial review in his deportation hearing. The court, however, should decide that issue expressly rather than holding that a decision is not necessary because the deportation was otherwise fundamentally fair.