16 F.3d 413
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Luis MARTINEZ-CONTRERAS, Defendant-Appellant.
 No. 92-5901.
 United States Court of Appeals,
Fourth Circuit.
 Submitted July 29, 1993.
Decided Jan. 6, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. James C. Fox, Chief District Judge. (CR-92-19-7-F)
 Randolph B. Monchick, Asst. Federal Public Defender, Raleigh, NC, for appellant.
 James R. Dedrick, U.S. Atty., Robert D. Potter, Jr., Asst. U.S. Atty., Raleigh, NC, for appellee.
 E.D.N.C.
 AFFIRMED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Jose Luis Martinez-Contreras ("Martinez") appeals from his conviction for being found in the United States following deportation for an aggravated felony, in violation of 8 U.S.C.A. Sec. 1326(a), (b)(2) (West Supp.1993). He contends that, because the underlying deportation hearing was constitutionally vitiated by the denial of his right to counsel and the absence of a valid waiver of his right to appeal, the district court erroneously denied his motion to dismiss the indictment. Martinez also argues that the Government is equitably estopped from relying on the deportation in securing this conviction and using the 1991 Sentencing Guidelines in calculating his sentence. Finding no error, we affirm.
 
 I.
 
 2
 On November 5, 1987, two days after being granted Special Agricultural Worker ("SAW") status, Martinez murdered a migrant worker in Pender County, North Carolina. He pled guilty to second-degree murder, allegedly in partial reliance on statements to his attorney by an unidentified Immigration & Naturalization Service ("INS") agent that deportation would not ensue, and served seventeen months before his March 1989 parole. Thereafter, Martinez received the green card issued under his 1987 SAW application from an INS applications clerk who was purportedly informed by Martinez of the murder conviction.
 
 
 3
 On August 10, 1991, while en route from North Carolina to Texas, Martinez was arrested for deportation in Vinton, Louisiana, based on his prior conviction, and served with Form I-274, an Advice of Rights form.* Two days later, Martinez was served with Form I-214, another Advice of Rights form, and, although denied by Martinez, Form I-221S, an Order to Show Cause and a list of available free legal services. Martinez was denied bond release and was notified, but failed to avail himself, of his right to seek judicial review thereof.
 
 
 4
 On September 6, 1991, Martinez, rejecting a proposed delay for additional preparation or the acquisition of legal counsel, elected to proceed immediately with the deportation hearing. He affirmed his understanding of the right to counsel, and the right to appeal the decision of the immigration judge ("I.J."). Martinez claims he was first provided with the list of available free legal services at this hearing. After receiving the list, Martinez consented to the continuation of the hearing.
 
 
 5
 Deportation was ordered pursuant to 8 U.S.C.A. Sec. 1251(a)(1)(B), (a)(2)(A)(i) (West Supp.1993), and Martinez elected to accept that decision. He was thereafter served with Form I-294, stating "any deported person who returns without permission is guilty of a felony. If convicted he may be punished by imprisonment of not more than two years and/or a fine of not more than $1,000.00," and deported to Mexico. Martinez was arrested in June 1992, after INS agents learned of his Pender County arrest for obtaining property by false pretenses.
 
 
 6
 After an extensive evidentiary hearing, the district court denied Martinez' motion to dismiss, based on its finding that the deportation hearing was fair and Martinez was not functionally deprived of his right to judicial review. The court also rejected Martinez' equitable estoppel arguments. Martinez entered a conditional plea to the charges, and was sentenced to forty-one months imprisonment.
 
 II.
 
 7
 A fundamentally unfair deportation hearing that effectively eliminates the right to judicial review may be collaterally attacked. United States v. Palacios-Martinez, 845 F.2d 89, 91 (5th Cir.) (discussing United States v. Mendoza-Lopez, 481 U.S. 828 (1987)), cert. denied, 488 U.S. 844 (1988). Fundamental unfairness requires deprivation of a fundamental right and resulting prejudice. United States v. Encarnacion-Galvez, 964 F.2d 402, 407 (5th Cir.), cert. denied, 61 U.S.L.W. 3302 (U.S.1992). Prejudice is, in turn, proven by "a reasonable likelihood that but for the errors complained of the defendant would not have been deported." 964 F.2d at 407.
 
 A.
 
 8
 The right to legal representation at the deportation hearing, 8 U.S.C.A. Sec. 1252(b) (West Supp.1993), did not entitle Martinez "to have counsel appointed at government expense to represent him." Delgado-Corea v. Immigration & Naturalization Serv., 804 F.2d 261, 262 (4th Cir.1986). Based on its finding that Martinez had received three notifications of his right to counsel and two copies of the list of available free legal service, the district court concluded that Martinez' decision to proceed with the hearing, after acknowledging his understanding of the right to counsel, was a waiver of that right. Cobourne v. Immigration & Naturalization Serv., 779 F.2d 1564, 1566 (11th Cir.1986).
 
 
 9
 The right to appeal a deportation decision may also be waived. Mendoza-Lopez, 481 U.S. at 840. The court, noting Martinez' acceptance of the I.J.'s decision and repeated concession that he knowingly waived the right to appeal, found Martinez was properly advised of his right to appeal and made a knowing, intelligent waiver thereof. See United States v. Zaleta-Sosa, 854 F.2d 48, 51-52 (5th Cir.1988) (failure to explain appeal rights "adequately" did not render hearing unfair); Palacios-Martinez, 845 F.2d at 92 ("Failure to ensure that a potential deportee knows and fully understands each and every one of his rights under INS regulations is not a deprivation of fundamental fairness.").
 
 
 10
 "Absent compelling evidence to the contrary, this Court declines to overturn a factual determination founded on witness demeanor and credibility." United States v. Locklear, 829 F.2d 1314, 1317 (4th Cir.1987). The court's conclusion that Martinez was afforded and waived the rights to counsel and to appeal was not clearly erroneous.
 
 B.
 
 11
 Although not necessary to dispose of this appeal given our previous finding, we also conclude that Martinez failed to demonstrate that prejudice would have resulted from a denial of these rights.
 
 III.
 
 12
 Equitable estoppel requires voluntary, affirmative misconduct that induces detrimental reliance by the party seeking to assert the estoppel. Maryland Dep't of Human Resources v. United States Dep't of Agric., 976 F.2d 1462, 1484 n. 24 (4th Cir.1992); United States v. Cox, 964 F.2d 1431, 1434 (4th Cir.1992). "[T]he Government may not be estopped on the same terms as any other litigant." Heckler v. Community Health Servs., Inc., 467 U.S. 51, 60 (1984).
 
 A.
 
 13
 INS's failure to deport Martinez immediately after his 1989 release, the unintended result of significant understaffing and a substantial backlog in the Charlotte INS office, cannot constitute affirmative misconduct by the Government. See Immigration & Naturalization Serv. v. Miranda, 459 U.S. 14, 18-19 (1982) (given caseload, inadvertent delay in performance of tasks not affirmative misconduct); Taneja v. Smith, 795 F.2d 355, 358 (4th Cir.1986) ("careless" denial of visa preference not affirmative misconduct). Erroneous acts or representations by INS employees, including the issuance of Martinez' green card and the alleged misrepresentations of an unidentified INS agent, are not affirmative misconduct attributable to the Government. See Office of Personnel Management v. Richmond, 496 U.S. 414, 415-16, 432-34 (1990); Miller v. United States, 949 F.2d 708, 712 (4th Cir.1991) ("[T]he Government is not bound by the unauthorized or incorrect statements of its agents.").
 
 
 14
 Moreover, Martinez has not demonstrated the reasonableness of his purported reliance or an ensuing change in his position for the worse. Heckler, 467 U.S. at 59. "[T]hose who deal with the Government ... may not rely on the conduct of Government agents contrary to law." Id. at 63.
 
 B.
 
 15
 According to Martinez, the INS warning letter's stated maximum penalty estops the Government from seeking a longer term of imprisonment.
 
 
 16
 Martinez was informed that reentry would subject him to criminal penalties. Despite its inaccuracy, the INS letter did not invalidate the deportation proceedings, create a sentencing "contract," or violate the Ex Post Facto Clause. Due process does not require that a defendant know with certainty the correct maximum penalty for a hypothetical criminal act before he may be prosecuted. See Chavez-Huerto, 972 F.2d at 1090 ("In no sense can the future possibility of a felony prosecution be said to be a direct consequence of the deportation."). The inaccurate information in the INS letter cannot give rise to estoppel.
 
 
 17
 We also reject Martinez' contention that, because the delayed deportation forestalled his ultimate reentry, the Government is estopped from using the 1991 version of Sec. 2L1.2(b)(2) of the Sentencing Guidelines, which enhanced Martinez' base offense level by sixteen, in calculating his sentence. United States Sentencing Commission, Guidelines Manual, Sec. 2L1.2(b)(2) (Nov.1991). The delay was not the result of affirmative misconduct. Martinez' criminal conduct occurred in June 1992, when he was found in the United States after deportation. See United States v. Canals-Jimenez, 943 F.2d 1284 (11th Cir.1991). We refuse to base Martinez' sentence on suppositions about what he might have done had he been deported earlier. The 1991 version of Sec. 2L1.2, unchanged between the date of Martinez's criminal conduct and his sentencing, was correctly applied. See United States v. Morrow, 925 F.2d 779, 782-83 (4th Cir.1991).
 
 IV.
 
 18
 Accordingly, we affirm Martinez' conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The rights described therein include the right to be represented by counsel "at no expense to the government," and the right to request "a list of available free legal services."