IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 99-50918

---

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

        versus

JUAN MANUEL LOPEZ-VASQUEZ, also known as
Carlos Gonzalez-Gonzalez,

                                        Defendant-Appellant.

---

Appeal from the United States District Court for the
Western District of Texas

---

September 15, 2000

ON PETITION FOR REHEARING

(Opinion August 16, 2000, 5th Cir., 2000, ___F.3d___)

Before GARWOOD, DeMOSS, and PARKER, Circuit Judges.

GARWOOD, Circuit Judge:

IT IS ORDERED that the petition for rehearing is overruled and the opinion previously issued herein August 16, 2000 is withdrawn in its entirety and the following is substituted therefore.

Defendant-appellant Juan Manuel Lopez-Vasquez (Lopez-Vasquez) appeals his conviction of one count of illegally entering the United States, after having been previously excluded, deported or removed therefrom, without having obtained the Attorney General's consent, in

violation of 8 U.S.C. § 1326. He challenges the denial of his motion to dismiss the indictment or to suppress the evidence of his previous removal from the United States. Concluding that the district court properly denied Lopez-Vasquez's motion, we affirm.

## Facts and Proceedings Below

On June 6, 1998, Lopez-Vasquez attempted to cross the border from Mexico into the United States at the Paso del Norte Port of Entry in El Paso, Texas, by declaring himself to be a United States citizen. When he was unable to supply proof of United States citizenship, Lopez-Vasquez was referred to a secondary inspection area for further interview. There, Lopez-Vasquez admitted to the Immigration and Naturalization Service (INS) inspectors that he was not a United States citizen, but rather, a Mexican citizen. The INS inspectors determined Lopez-Vasquez to be ineligible for admission into the United States and, pursuant to 8 U.S.C. § 1225(b)(1)(A)(i)[1], placed

---

[1] Because the removal proceedings against Lopez-Vasquez commenced in June 1998, the permanent provisions of the Illegal Immigration and Reform and Immigrant Responsibility Act of 1996 (IIRIRA) were in effect, including IIRIRA § 302(b)(1)(A)(i), now codified at 8 U.S.C. § 1225(b)(1)(A)(i). *See Lopez-Elias v. Reno*, 209 F.3d 788, 790 n.1 (5th Cir. 2000) (stating that proceedings commenced after April 1, 1997 are governed by IIRIRA's permanent provisions). Under § 1225(b)(1)(A)(i), if an INS inspector determines during secondary inspection that an alien who is seeking entry into the United States at a port of entry is inadmissible because the alien has made a false claim of United States citizenship, *see* 8 U.S.C. § 1182(a)(6)(C)(ii), the inspector "shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C.] § 1158 . . . or a fear of prosecution." 8 U.S.C. § 1225(b)(1)(A)(i). During his secondary inspection, Lopez-

2

him in "expedited removal proceedings" and ordered him removed[2] from the United States that day. Accordingly, Lopez-Vasquez was never admitted into the United States. Before Lopez-Vasquez's departure from the secondary inspection area, the INS inspectors provided him with a form stating that: (1) he was ineligible for admission to the United States because he had made a false claim of United States citizenship; (2) he was prohibited from thereafter entering or attempting to enter the United States for a period of five years without first obtaining the consent of the Attorney General to reapply for admission; and (3) 8 U.S.C. § 1326 makes it a crime punishable by a fine and/or imprisonment for a period of up

---

Vasquez declared in a sworn statement that he had no fear of returning to Mexico and did not seek asylum (nor since then has he ever claimed that this declaration was not correct).

[2] Before IIRIRA's enactment in 1996, individuals such as Lopez-Vasquez who were ineligible for admission into the United States and were never admitted into the United States were referred to as "excludable," while aliens who had gained admission, but later became subject to expulsion from the United States, were referred to as "deportable." *See* 8 U.S.C. §§ 1182, 1251 (1994); *see also Landon v. Plasencia*, 103 S.Ct. 321, 325 (1982) ("The deportation hearing is the usual means of proceeding against an alien already physically in the United States, and the exclusion hearing is the usual means of proceeding against an alien outside the United States seeking admission."). Excludable aliens are now referred to as "inadmissible." *See* 8 U.S.C. § 1182. As many of the cases we discuss in resolving this appeal were decided before 1996, we will use the terms "inadmissible" and "excludable" interchangeably. In addition, the IIRIRA has "'d[one] away with the previous legal distinction among deportation, removal, and exclusion proceedings.'" *United States v. Pena-Renovato*, 168 F.3d 163, 164 (5th Cir. 1999) (quoting *United States v. Pantin*, 155 F.3d 91, 92 (2d Cir. 1998), *cert. denied*, 119 S.Ct. 835 (1999)); *see* IIRIRA § 304 (codified at 8 U.S.C. §§ 1229-1229c). Now, the term "removal proceedings" refers to proceedings applicable to both inadmissible and deportable aliens. *See* 8 U.S.C. § 1229a(e)(2).

3

to twenty years for him to thereafter enter, attempt to enter, or be found in the United States without such consent.

On December 13, 1998, Lopez-Vasquez was found in El Paso, Texas by United States Border Patrol agents. The agents arrested Lopez-Vasquez when he could not provide documentation authorizing him to be present in the United States. It was later discovered that Lopez-Vasquez had previously been ordered removed from the United States and had not received the Attorney General's consent to re-apply for admission into the United States, and he was indicted for illegally entering the United States, in violation of 8 U.S.C. § 1326. Before trial, Lopez-Vasquez moved to dismiss the indictment or to suppress evidence of his June 1998 exclusion and removal, based on his assertion that, because the procedures used to remove him violated due process and were not subject to judicial review, his June 1998 removal order may not be used as evidence against him in his criminal prosecution for illegal entry. In addition, Lopez-Vasquez contended that if he had been afforded due process, he could have avoided removal because he would have been informed that he could have applied for voluntary departure under 8 U.S.C. § 1229c[3] or withdrawn his application for admission under

---

[3] 8 U.S.C. § 1229c(a) states as follows:
"The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense under this subsection, in lieu of being subject to proceedings under section 1229a of this title or prior to the completion of such proceedings, if the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4)(B) of this title."

4

8 U.S.C. § 1225(a)(4)[4].  Lopez-Vasquez, however, has never claimed that the INS erred in finding him inadmissible for having falsely claimed to be a United States citizen in attempting to enter the United States on June 6, 1998.

The district court denied Lopez-Vasquez's motion to dismiss or to suppress, noting that in order to successfully challenge the use of his June 1998 removal order in his section 1326 illegal entry prosecution, Lopez-Vasquez must establish both that his removal was not subject to  judicial review and that it was fundamentally unfair in a manner that caused him prejudice.  In denying Lopez-Vasquez's motion, the district court focused on Lopez-Vasquez's failure to prove prejudice.  With regard to Lopez-Vasquez's claim that he could have applied for voluntary departure, the district court found no prejudice because the Government had established that Lopez-Vasquez would not have been allowed to depart voluntarily because he had previously been granted a voluntary departure on March 29, 1997.  *See* 8 U.S.C. § 1229c(c)[5].  As to Lopez-Vasquez's assertion that he could have withdrawn his application for admission, thereby avoiding removal, the district

---

[4] 8 U.S.C. § 1225(a)(4) provides that "[a]n alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States."

[5] 8 U.S.C. § 1229c(c) states that "[t]he Attorney General shall not permit an alien to depart voluntarily under this section if the alien was previously permitted to so depart after having been found inadmissible under section 1182(a)(6)(A) of this title."

5

court likewise held there was no prejudice, finding that this relief was purely discretionary and that, under applicable INS policies, Lopez-Vasquez would not have been granted such relief because he had previously been convicted of a criminal offense—unauthorized use of a vehicle[6]. Based on these conclusions, the district court determined that because Lopez-Vasquez could not establish any prejudice that resulted from the procedures used to remove him, he could not show that his removal was fundamentally unfair. Therefore, the district court ruled that Lopez-Vasquez's June 1998 removal order could serve as an element of his prosecution for illegal entry under 8 U.S.C. § 1326.

Lopez-Vasquez then moved for reconsideration of the denial of his motion, asserting that the case law did not require him to prove that he *probably* suffered prejudice, instead claiming only a showing of the possibility prejudice was necessary. He also contended that in June 1998 he was entitled to a future visa based on his having an immediate relative, his father, who was a lawful

---

[6] On November 6, 1997, Lopez-Vasquez pleaded guilty in Texas state court to the offense of unauthorized use of a vehicle and was sentenced to two years' community supervision. Texas law describes unauthorized use a vehicle as follows:

"(a) A person commits an offense if he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner.
(b) An offense under this section is a state jail felony." TEXAS PENAL CODE § 31.07

permanent resident of the United States[7], and therefore would not have been removed if the removal procedures were not so lacking in procedural fairness. Moreover, he maintained that his prior conviction for unauthorized use of a vehicle was not an aggravated felony or a crime of violence and thus did not disqualify him from either withdrawing his application for admission or receiving relief based on his entitlement to a visa. In response, the Government contended that Lopez-Vasquez was not eligible for a visa and, even if he had obtained one, his status as an aggravated felon, based on his conviction of unauthorized use of a vehicle[8], would have precluded his entry under it. The district court carried Lopez-Vasquez's motion for reconsideration to trial.

---

[7] Curiously, in his June 6, 1998 sworn statement to an INS inspector, Lopez-Vasquez declared that neither of his parents had ever legally immigrated to the United States. Nor did Lopez-Vasquez inform the INS inspector that he was entitled to a visa or had a pending visa application.

[8] After the district court denied Lopez-Vasquez's due process motion, the presentence report concluded that Lopez-Vasquez's prior conviction was a felony, but not an aggravated felony, and the district court adopted the report's recommendation. Although deciding this issue is unnecessary for our resolution of this case, it is likely that the presentence report's characterization of Lopez-Vasquez's status was correct. This Court has held that "the unauthorized use of [a] motor vehicle . . . qualifies as a crime of violence under 18 U.S.C. § 16." *United States v. Galvan-Rodriguez*, 169 F.3d 217, 220 (5th Cir. 1999) (*per curiam*). A crime of violence qualifies as an aggravated felony for purposes of sentencing under U.S.S.G. § 2L1.2 if the crime was punished by imposition of a sentence of imprisonment of at least one year. Probationary sentences do not qualify as an imposition of a sentence of imprisonment under the requirements of § 2L1.2, *see United States v. Herrera-Solorzano*, 114 F.3d 48, 50 (5th Cir. 1997), although sentences that are imposed and then suspended or deferred may so qualify. *See Galvan-Rodriguez*, 169 F.3d at 218-19.

7

Lopez-Vasquez waived his right to a jury trial and stipulated to the following facts: (1) he was an alien; (2) he was removed from the United States in an INS administrative proceeding on June 6, 1998; (3) he was found in the United States on or about December 13, 1998; and (4) he had not received the Attorney General's consent to reapply for admission into the United States since his June 1998 removal and prior to his having been found in the United States on or about December 13, 1998. After a bench trial, the district court denied Lopez-Vasquez's motion for reconsideration of his motion to dismiss and/or to suppress and found him guilty of the offense of illegal entry contrary to section 1326. The district court sentenced Lopez-Vasquez to ten months' imprisonment and two years' non-reporting supervised release. Lopez-Vasquez timely appealed to this Court.

## Discussion

Lopez-Vasquez contends that the district court erred in denying his motion to dismiss or to suppress. Lopez-Vasquez asserts that the removal procedures did not provide for judicial review of his removal and, in fact, 8 U.S.C. § 1225(b)(1)(D)[9] strips the district court and this Court of jurisdiction to consider whether his removal violated due

---

[9]  8 U.S.C. § 1225(b)(1)(D) provides:
    "In any action brought against an alien under section 1325(a) of this title or section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii)."

8

process and caused him prejudice.  Lopez-Vasquez argues that this complete lack of judicial review, including any to determine whether there was prejudice, makes it unconstitutional to permit his June 1998 removal to be used as an element of his instant conviction for violating 8 U.S.C. § 1326[10].

[10]  8 U.S.C. § 1326 states:
"(a) Subject to subsection (b) of this section, any alien who–
(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
shall be fined under Title 18, or imprisoned not more than 2 years, or both.
(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection–
(1) whose removal was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both;
(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both;
(3) who has been excluded from the United States pursuant to section 1225(c) of this title because the alien was excludable under section 1182(a)(3)(B) of this title or who has been removed from the United States pursuant to the provisions of subchapter V of this chapter, and who thereafter, without the permission of the Attorney General, enters the United

We review Lopez-Vasquez's constitutional challenge *de novo*. *See United*

*States v. Sierra-Hernandez*, 192 F.3d 501, 503 (5th Cir. 1999), *cert.*

*denied*, 120 S.Ct. 1213 (2000).[11]

States, or attempts to do so, shall be fined under Title 18 and imprisoned for a period of 10 years, which sentence shall not run concurrently with any other sentence[;] or

(4) who was removed from the United States pursuant to section 1231(a)(4)(B) of this title who thereafter, without the permission of the Attorney General, enters, attempts to enter, or is at any time found in, the United States (unless the Attorney General has expressly consented to such alien's reentry) shall be fined under Title 18, imprisoned for not more than 10 years, or both.

For the purposes of this subsection, the term 'removal' includes any agreement in which an alien stipulates to removal during (or not during) a criminal trial under either Federal or State law.

(c) Any alien deported pursuant to section 1252(h)(2) of this title who enters, attempts to enter, or is at any time found in, the United States (unless the Attorney General has expressly consented to such alien's reentry) shall be incarcerated for the remainder of the sentence of imprisonment which was pending at the time of deportation without any reduction for parole or supervised release. Such alien shall be subject to such other penalties relating to the reentry of deported aliens as may be available under this section or any other provision of law.

(d) In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) of this section unless the alien demonstrates that—

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial reviews and

(3) the entry of the order was fundamentally unfair."

[11] The Government contends that we should review the district court's denial of Lopez-Vasquez's motion to dismiss for plain error

Lopez-Vasquez principally relies on the Supreme Court's decision in *United States v. Mendoza-Lopez*, 107 S.Ct. 2148 (1987). In *Mendoza-Lopez*, the Court considered the use of prior deportation orders in the criminal prosecution of two aliens for illegal reentry, in violation of 8 U.S.C. § 1326. *See id.* at 2150-51. Before the district court, the defendants moved to dismiss the indictment against them on the basis that their prior deportation hearing[12] was rendered fundamentally unfair by the immigration judge's inadequately informing them of their right to counsel at the hearing and accepting their unknowing waivers of their right to apply for suspension of deportation. *See id.* at 2151. The district court agreed and dismissed the indictments, concluding that the defendants' lack of understanding of their rights to apply for suspension of deportation or their rights to appeal their deportation orders rendered their prior deportation proceeding fundamentally unfair.

only, because Lopez-Vasquez did not raise the contention he now urges in the court below. Despite conceding that he did not cite to the district court the statute, 8 U.S.C. § 1225(b)(1)(D), Lopez-Vasquez now claims that it stripped the district court of jurisdiction to review his removal and that our consideration of this issue is not limited to plain error. Determining the appropriate standard of review is further complicated by the fact that Lopez-Vasquez's argument implicates the jurisdiction of the federal courts—an issue that "cannot be waived and can be raised at any time." *Barnes v. Levitt*, 118 F.3d 404, 410 (5th Cir. 1997); *see Ruhrgas AG v. Marathon Oil Co.*, 119 S.Ct. 1563, 1570 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."). Because we conclude that the district court's denial of Lopez-Vasquez's motion was correct under either standard of review, we decline to choose between them. We therefore assume, without deciding, that Lopez-Vasquez adequately preserved this ground of error for appellate review.

[12] The two defendants, along with eleven other persons, were deported in the same proceeding.

*See id*. at 2152. The Court of Appeals affirmed, determining first that a defendant prosecuted under section 1326 could collaterally attack a prior deportation order and second that these defendants' deportation hearings were fundamentally unfair and, thus, the resulting deportation orders could not form the basis of the section 1326 charges against them. *See id*.

The Government sought review by the Supreme Court, arguing that a collateral attack of an underlying deportation order was neither authorized in a section 1326 prosecution nor required under the Constitution for the order to serve as an element of a section 1326 prosecution and conviction for illegal reentry. In doing so, the Government did *not* challenge the lower courts' findings "that the deportation proceeding in th[e] case was fundamentally unfair and that the deportation order was therefore unlawful." *Id*. at 2153 n.8; *see also id*. at 2156 ("The United States has asked this Court to assume that [defendants'] deportation hearing was fundamentally unfair in considering whether collateral attack on the hearing may be permitted. We consequently accept the legal conclusions of the court below that the deportation hearing violated due process.") (internal citation omitted). With regard to the Government's contention that section 1326 did not itself authorize the underlying deportation order and proceeding to be collaterally attacked in a section 1326 prosecution, the Court agreed. *See id*. at 2154 ("Congress did not intend the validity of the deportation order to be contestable in a § 1326 prosecution . . ..").

However, the Court also concluded that, in the absence of effective judicial review, the deportation proceeding and order, which suffered from fundamental unfairness, "may not be used to support a criminal conviction."  *Id*. at 2157.  Accordingly, the Court affirmed the dismissal of the indictments.

This Court, interpreting *Mendoza-Lopez*, has formulated three distinct but related requirements that must be met by an alien wishing to challenge the use of a prior deportation order, or in this case a removal order, in a prosecution for illegal entry under 8 U.S.C. § 1326: *the alien* must establish that (1) the prior hearing was "fundamentally unfair"; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice.  *See United States v. Benitez-Villafuerte*, 186 F.3d 651, 658 (5th Cir. 1999); *United States v. Asibor*, 109 F.3d 1023, 1038 (5th Cir. 1997); *United States v. Estada-Trochez*, 66 F.3d 733, 735 (5th Cir. 1995); *United States v. Encarnacion-Galvez*, 964 F.2d 402, 406 (5th Cir. 1992); *United States v. Palacios-Martinez*, 845 F.2d 89, 91 (5th Cir. 1988).[13] We first

_____

[13]    The majority of our sister circuits agree with our interpretation of *Lopez-Mendoza*.  *See, e.g., United States v. Lara-Aceves*, 183 F.3d 1007, 1010 (9th Cir. 1999); *United States v. Wittgenstein*, 163 F.3d 1164, 1170 (10th Cir. 1998); *United States v. Parades-Batista*, 140 F.3d 367, 378 (2d Cir.), *cert. denied*, 119 S.Ct. 143 (1998); *United States v. Loaisiga*, 104 F.3d 484, 487 (1st Cir. 1997); *United States v. Perez-Ponce*, 62 F.3d 1120, 1122 (8th Cir. 1995); *United States v. Espinoza-Farlo*, 34 F.3d 469, 471 (7th Cir. 1994); *Figeroa v. U.S. INS*, 886 F.2d 76, 78 (4th Cir. 1989); *United States v. Holland*, 876 F.2d 1533, 1537 (11th Cir. 1989).

consider whether the procedures employed in Lopez-Vasquez's removal were "fundamentally unfair."

Our decisions considering a collateral attack on a prior order used as an element of a section 1326 illegal entry prosecution have involved deportation orders as the predicate element of the section 1326 prosecution. *See, e.g., Benitez-Villafuerte*, 186 F.3d at 654-55; *Estada-Trochez*, 66 F.3d at 734-35; *Encarnacion-Galvez*, 964 F.2d at 404-05. Although the Supreme Court has not enumerated the procedural protections guaranteed to an alien in a deportation proceeding, *see Mendoza-Lopez*, 107 S.Ct. at 2155 n.17, it is well-settled that "aliens in deportation proceedings are to be 'accorded due process.'" *Lara-Aceves*, 183 F.3d at 1011 (quoting *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995)); *see Shaughnessy v. United States ex rel. Mezei*, 73 S.Ct. 625, 629 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.");

---

With AEDPA's enactment in 1996, Congress effectively codified this reading of *Mendoza-Lopez* in 8 U.S.C. § 1326(d), which provides:
> "In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) of this section unless the alien demonstrates that–
>       (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>       (2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>       (3) the entry of the order was fundamentally unfair."

14

*Benitez-Villafuerte*, 186 F.3d at 656 ("Aliens who have entered the United States unlawfully are assured the protection of the Fifth Amendment due process clause.") (citations omitted). However, "an alien on the threshold of initial entry stands on a different footing." *Mezei*, 73 S.Ct. at 629. In attempting to enter the United States on June 6, 1998, Lopez-Vasquez was never admitted into the United States; instead, the INS inspectors prevented him from doing so at the border and later founnd him inadmissible or excludable. In determining whether Lopez-Vasquez's removal procedures violated due process, we must first address what process is due an alien seeking admission into the United States who has not gained entry into the United States and remains subject to being found inadmissible.

An alien "seek[ing] admission to this country may not do so under any claim of right." *United States ex rel. Knauff v. Shaughnessy*, 70 S.Ct. 309, 312 (1950); *see Kleindeinst v. Mandel*, 92 S.Ct. 2576, 2581 (1972) ("[A]n unadmitted and nonresident alien[] ha[s] no constitutional right of entry to this country as a nonimmigrant or otherwise.") (citations omitted). "An attempt to enter this country is a request for a privilege rather than an assertion of right." *Zadvydas v. Underdown*, 185 F.3d 279, 294 (5th Cir. 1999), *petition for cert. filed*, No. 99-7791 (Jan. 11, 2000) (citing *Landon*, 103 S.Ct. at 328). In the exclusion or inadmissibility context, only the process afforded by the Congress and the Executive is required. *See id*. at 294-95; *see also Landon*, 103 S.Ct. at 329 ("This Court has long held that an alien seeking initial

15

admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."); *Kleindienst*, 92 S.Ct. at 2585 ("[P]lenary congressional power to make policies and rules for exclusion of aliens has long been firmly established."); *Boutilier v. INS*, 87 S.Ct. 1563, 1567 (1967) ("It has long been held that the Congress has plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden.") (citation omitted); *Knauff*, 70 S.Ct. at 313 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") (citations omitted); *Ekiu v. United States*, 12 S.Ct. 336, 339 (1892) ("As to such persons, the decisions of executive or administrative officers, acting within powers expressly conferred by congress, are due process of law.") (citations omitted). On June 6, 1998, the INS inspectors found Lopez-Vasquez to be inadmissible, or excludable under the pre-IIRIRA terminology. Accordingly, he did not enter into the United States on that occasion. *See Gisbert v. U.S. Attorney General*, 988 F.2d 1437, 1440 (5th Cir. 1993) ("Although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country.") (citations omitted).  Therefore, in his removal, Lopez-Vasquez was

16

entitled only to the process provided by Congress.[14]

On June 6, 1998, Lopez-Vasquez was placed in expedited removal proceedings for attempting to enter the United States by falsely declaring himself to be a United States citizen.  *See* 8 U.S.C. § 1225(b)(1)(A)(i)[15].  Federal regulations exist that set forth explicitly the procedures for the expedited removal of inadmissible aliens.  *See* 8 C.F.R. § 235.3.  Lopez-Vasquez does not contend that these procedures were not followed.  Therefore, we hold that Lopez-Vasquez was not denied procedural due process and that his removal was not fundamentally unfair.

Because Lopez-Vasquez's removal proceedings did not violate due

---

[14]  In *Landon*, the Court considered what process is due a permanent resident alien seeking admission to the United States following a two-day visit abroad.  *See Landon*, 103 S.Ct. at 324.  Although the Court rejected Plasencia's argument that she was entitled to a deportation hearing, the Court also determined that, even though she was an alien seeking admission into the United States, she was entitled to due process, *because* of her having previously gained admission into the United States, maintained residency in the country for five years, and "develop[ed] the ties that go with permanent residence . . .." *Id*. at 329.  Moreover, the United States conceded that Plasencia "ha[d] a right to due process." *Id*. at 330 (citations omitted).  In the present case, the Government does not make such a concession and argues that Lopez-Vasquez is due only the process provided under the immigration statutes and regulations.  In addition, Lopez-Vasquez does not contend, nor does the record suggest, that his status is analogous to Plasencia's.

[15]  8 U.S.C. § 1225(b)(1)(A)(i) provides as follows:
"If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissable under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution."

17

process, we need not address whether he suffered any prejudice or whether he was denied judicial review of the hearing and order. *See Encarnacion-Galvez*, 964 F.2d at 406 (stating that, if the alien fails to establish one element of his challenge, a court need not consider the others) (citing *Palacios-Martinez*, 845 F.2d at 92; *United States v. Saucedo-Velasquez*, 843 F.2d 832, 836 & n.6 (5th Cir. 1988)). Because he cannot show that his removal proceeding was fundamentally unfair, Lopez-Vasquez's June 1998 removal order may permissibly serve as a basis for his conviction under 8 U.S.C. § 1326. Therefore, the district court did not err in denying Lopez-Vasquez's motion to dismiss the indictment or to suppress.

Alternatively, we agree with the district court that even if Lopez-Vasquez was denied due process in the prior removal proceeding, he did not suffer any prejudice. In this connection, "[a] showing of prejudice means 'there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported' [or removed]." *Benitez-Villafuerte,* 186 F.3d at 658-59 (quoting *Estrada-Trochez*, 66 F.3d at 735). "In short, '[i]f the defendant was legally deportable and, despite the INS's errors, the proceeding could not have yielded a different result, the deportation is valid for purposes of section 1326.'" *Id.* (quoting *United States v. Galicia-Gonzlez*, 997 F.2d 602, 603 (9th Cir. 1993)) (internal quotation omitted and alteration in original). We also note that, on appeal, Lopez-Vasquez does not contest the district court's finding that, even if his removal order violated

18

his due process rights, he suffered no prejudice and would not have avoided removal on June 6, 1998. Rather, Lopez-Vasquez's argument in this connection is that section 1225(b)(1)(D) (see note 9, *supra*) deprives both the district court and this court of jurisdiction to determine whether or not the prior removal was invalid, including whether or not but for the errors complained of he would nevertheless have been removed.[16]

We conclude that Lopez-Vasquez's argument in unavailing. He proceeds on the theory that *Mendoza-Lopez* entitles him to relief. However, as discussed above, to be entitled to relief under *Mendoza-Lopez* prejudice must be shown. We hold that section 1225(b)(1)(D) does not preclude the district court or this court from determining that the requisites of a *Mendoza-Lopez* claim as asserted by Lopez-Vasquez are *not* met. Under the view taken by Lopez-Vasquez, section 1225(b)(1)(D) would result in increasing the number of defendants who would escape section 1326 prosecution well beyond what it would have been had section 1225(b)(1)(D) never been enacted, a result plainly not intended by Congress. The district court's denial of Lopez-Vasquez's motions to dismiss and to suppress based on asserted defects in his prior removal proceeding clearly did not violate section 1225(b)(1)(D). We do *not* determine whether section 1225(b)(1)(D) precludes a district court from

---

[16]*But see* 8 U.S.C. § 1252(c) (provisions respecting judicial review of removal orders issued under section 1225(b)(1)) and section 1326(d) (see note 13 *supra*) (authorizing certain challenges to prior "deportation order" in section 1326 prosecution).

19

*dismissing* a section 1326 prosecution on the basis that the defendant has properly established a valid *Mendoza-Lopez* claim respecting the prior removal or deportation or whether, if section 1225(b)(1)(D) has that effect, it is unconstitutional. If section 1225(b)(1)(D) has that effect and is nevertheless constitutional, then Lopez-Vasquez is entitled to no relief; if it does not have that effect, or if it does have that effect and is hence unconstitutional, then it does not preclude the district court or this court from determining that the prejudice requisite of a *Mendoza-Lopez* claim has not been met, and for that reason declining to dismiss the section 1326 prosecution.[17]

Accordingly, for this reason as well–because the district court properly found there was no prejudice from the asserted procedural defects in the prior removal--the district court did not err in denying Lopez-Vasquez's motion to dismiss or suppress.

### Conclusion

For the reasons stated, the judgment of the district court is

AFFIRMED.

---

[17]*Cf. Lara v. Trominski*, 216 F.2d 487 at 494 (5th Cir. 2000) ("even if we assume that the district court would have jurisdictional over Lara's § 2241 claim if Lara could demonstrate that his prior deportation involved a gross miscarriage of justice, we find that the BIA did not err in finding that Lara had not made this demonstration").