IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-10730
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

GABRIEL BENITEZ-VILLAFUERTE,

Defendant-Appellee.
_____

Appeal from the United States District Court
for the Northern District of Texas
_____

Before REAVLEY, JOLLY, and EMILIO M. GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

On July 2, 1997, Gabriel Benitez-Villafuerte ("Benitez") was deported from the United States under the expedited removal procedure set forth in 8 U.S.C. § 1228. Soon thereafter, he illegally reentered. This appeal arises out of the government's criminal prosecution of Benitez under 8 U.S.C. § 1326(a) and (b)(2) for that illegal reentry. In this prosecution, the government has the burden to prove that Benitez had been previously deported. During the prosecution of this case, Benitez collaterally attacked the constitutionality of the previous § 1228 proceeding under United States v. Mendoza-Lopez, 481 U.S. 828 (1987), and moved the district court to suppress the evidence of his deportation. The district court granted the motion. It noted that Benitez had waived his rights to judicially contest that deportation only

before the INS officers and that he had not been taken before any neutral magistrate before he was deported. Consequently, it held that Benitez's deportation had failed to comport with Fifth Amendment procedural due process. We hold that waiver of rights in an administrative deportation under § 1228 satisfies procedural due process. As such, since the record of Benitez's § 1228 proceeding is not constitutionally tainted, it is admissible in this case. For the reasons that follow, we reverse the judgment of the district court and remand the case for trial.

I

A

On February 13, 1997, Gabriel Benitez-Villafuerte, a Mexican national, was convicted in Dallas County, Texas, of theft of property exceeding $1,500 in value, in violation of Texas Penal Code § 31.03.[1] Benitez received a suspended sentence of two years imprisonment.

Sometime later, Benitez was apprehended by the local authorities and placed in the Dallas County jail.[2] On June 30, 1997, Benitez was removed from jail and detained by the Immigration and Naturalization Service (the "INS"). After interviewing Benitez in English and reviewing his conviction documents, Border Patrol

_____

[1]Although the record is not entirely clear, it seems that the object of the theft was an air conditioning unit.

[2]The record contains no information as to the exact date Benitez was detained nor why.

Agent Michael Winfrey recommended to his supervisor, Debbie Bryant, that because of Benitez's prior felony conviction, he was subject to deportation from the United States. Consequently, the INS initiated expedited removal proceedings against Benitez under 8 U.S.C. § 1227(a)(2)(A)(iii)[3] and 8 U.S.C. § 1228.[4] The deportation was administratively conducted by the INS. INS Assistant Deputy Director Neil Jacobs prepared and signed the Notice of Intent to Issue Final Administrative Removal Order ("Notice of Intent"), the initial charging document, alleging that: (1) Benitez entered the United States on or about January 20, 1997, near Laredo, Texas, without inspection by an immigration officer; (2) Benitez had not been admitted for permanent residence in the

---

[3]Section 1227(a)(2)(A)(iii) provides that "any alien who is convicted of an aggravated felony at any time after admission is deportable."

[4]Section 1228(b)(1) provides for the expedited removal of an alien who is not a permanent resident and who is deportable under § 1227(a)(2)(A)(iii). This section reads as follows:

(1) The Attorney General may, in the case of an alien described in paragraph (2), determine the deportability of such alien under section 1227(a)(2)(A)(iii) of this title (relating to conviction of an aggravated felony) and issue an order of removal pursuant to the procedures set forth in this subsection or section 1229a of this title.

(2) An alien is described in this paragraph if the alien--
    (A) was not lawfully admitted for permanent residence at the time at which proceedings under this section commenced; or
    (B) had permanent resident status on a conditional basis (as described in section 1186a of this title) at the time that proceedings under this section commenced.

United States; (3) Benitez had been convicted of theft on February 13, 1997, which constituted an aggravated felony under 8 U.S.C. § 1101(a)(43)(G)[5]; and, thus, (4) Benitez was deportable under § 1227(a)(2)(A)(iii). Agent Winfrey served Benitez with the Notice of Intent form, and read the contents of the document to him in English. Benitez, in turn, signed the second page of the Notice of Intent form, acknowledging its receipt. After indicating that he wished to return to Mexico, Benitez signed the "waiver" portion of the Notice of Intent form, which provided:

<u>**I DO NOT WISH TO CONTEST**</u>

> **"I admit the allegations and charges of this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my right to rebut and contest the above charges and my right to file a petition for review of the final order. I wish to be deported.**
> **I also waive the 14 day period of execution for the final order of removal...."**

(1 R 0085).

A second INS agent, Detention Enforcement Officer Darrell Russell, witnessed Benitez's signature, and attested to such on the Notice of Intent form. That same day, INS Deputy District Director William G. Harrington executed a Final Administrative Removal Order (the "Removal Order"), which was also served on Benitez and read to him in English. In the Removal Order, Harrington made the

---

[5] 8 U.S.C. § 1101(a)(43)(G) defines that the term "aggravated felony," <u>inter alia</u>, as "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year."

4

following findings of fact and conclusions of law: (1) Benitez was not a citizen or national of the United States, nor had he been lawfully admitted for permanent residence; (2) Benitez had been convicted of an aggravated felony as defined in § 1101(a)(43)(G) and therefore was ineligible for any discretionary relief from removal that the Attorney General may grant; and (3) the administrative record established by clear, convincing, and unequivocal evidence that Benitez was deportable under § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony. The Removal Order further decreed that Benitez was to be deported to Mexico. Consequently, on July 2, 1997, Russell served Benitez with a warrant of deportation, and he was subsequently deported.

In less than a year, Benitez had reentered the United States. On January 5, 1998, he was arrested in Dallas, Texas. While incarcerated, Benitez was questioned by INS agents, and a criminal investigation of his alien status was initiated.

On March 3, Benitez was indicted on one count of illegal reentry after deportation in violation of 8 U.S.C. § 1326(a) and (b)(2)[6]. Following a plea of not guilty, Benitez filed a motion to

---

[6]Section 1326(a) and (b)(2) provides in relevant part:

(a) Subject to subsection (b) of this section, any alien who--
  (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
  (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his

suppress the evidence of his prior deportation on the grounds that it violated his right to procedural due process.[7]  The district court granted Benitez's motion to suppress.

The district court reasoned that because Benitez's waiver of rights in the § 1228 proceeding was not before a neutral magistrate who formally advised Benitez of his basic rights, including the right to contest his expedited removal, his waiver did not comport with constitutional due process.  The district court therefore suppressed the evidence of Benitez's July 2, 1997 deportation.  The government filed a timely appeal.

II

reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Criminal penalties for reentry of certain removed aliens
Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection--
   (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both.

[7]To obtain a conviction for illegal reentry, the government must establish beyond a reasonable doubt: (1) alienage; (2) arrest and deportation; (3) reentry into or unlawful presence in the United States; and (4) lack of the Attorney General's consent to reenter.  United States v. Flores-Peraza, 58 F.3d 164, 166 (5th Cir. 1995) (citations omitted).

6

A

The district court held that before evidence of a § 1228 administrative deportation can be introduced in a subsequent criminal trial for alleged reentry, the administrative deportation must satisfy the strictest standards for due process usually applicable only in criminal trials. Specifically, the district court held that Benitez's waiver of rights executed before INS officers did not constitute an effective waiver of his basic rights to judicially contest his deportation because his waiver had not been made in open court before a neutral magistrate who could affirm that the waiver was knowing and voluntary. Thus, the district court concluded that his deportation was ordered in violation of his Fifth Amendment due process rights, and evidence thereof is inadmissible. The district court was unable to cite any authority in support of its holding. This lack of authority is not surprising since such a high hurdle has not before been raised in order to comply with the basic notions of due process in a deportation case.

Aliens who have entered the United States unlawfully are assured the protection of the Fifth Amendment due process clause. Nose v. Attorney General of the United States, 993 F.2d 75, 78 (5th Cir. 1993); Haitian Refugee Center v. Smith, 676 F.2d 1023, 1036 (5th Cir. 1992). The due process clause forbids the state from "arbitrarily . . . causing an alien who has entered the country . . . illegally to be taken into custody and deported

7

without giving him all opportunity to be heard upon the questions involving his right to be and remain in the United States." Yamataya v. Fisher, 189 U.S. 86, 101, 23 S.Ct. 611, 614-15, 47 L.Ed. 721 (1903). Courts have recognized that the constitutional sufficiency of procedures required by due process varies with the circumstances of each individual case. Landon v. Plasencia, 459 U.S. 33 (1982), citing Lassiter v. Department of Social Services, 452 U.S. 18, 24-25, 101 S.Ct. 2153, 2158 (1981). Generally, the right to due process includes the right to a hearing before an immigration judge prior to deportation. Nose, 993 F.2d at 79. Nevertheless, due process rights, including the right to a hearing, may effectively be waived. Boddie v. Connecticut, 401 U.S. 371, 378-79, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)(holding "the hearing required by due process is subject to waiver").

A deportation hearing is a civil, not a criminal, action. Prichard-Ciriza v. I.N.S., 978 F.2d 219, 222 (5th Cir. 1992) (citing I.N.S. v. Lopez-Mendoza, 468 U.S. 1032, 1038-39 (1984); Carlson v. Landon, 342 U.S. 524, 538 (1952). As such, the full range of constitutional protections available to a defendant in a criminal case are not afforded an alien in a deportation proceeding. Id.; Patel v. U.S. I.N.S., 803 F.2d 804, 806 (5th Cir. 1986) (citations omitted); Ramirez-Osorio v. I.N.S., 745 F.2d 937, 944 (5th Cir. 1984) (citations omitted). "The power to expel aliens is essentially a power of the political branches of government, which may be exercised entirely through executive

officers, with such opportunity for judicial review of their action as Congress may see fit to authorize or permit." Carlson v. Landon 342 U.S. 524, 537 (1952) (citations omitted). See also The Japanese Immigrant Case, 189 U.S. 86, 97-98 (1903); Fong Yue Ting v. United States, 149 U.S. 698, 713-15 (1893). Although in some contexts, Congress has statutorily provided for the judicial review of deportation hearings, such review is not guaranteed by the Constitution. Carlson, 342 U.S. at 537 (citations omitted).

The Supreme Court has made it clear that due process requires only that an alien be provided notice of the charges against him, a hearing before an executive or administrative tribunal, and a fair opportunity to be heard. Kwong Hai Chew v. Colding, 1953, 344 U.S. 590, 597-98 (1953). "The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy." Landon, 459 U.S. at 34.

Relying on this precedent, it is clear to us that the administrative deportation procedures of § 1228 afforded Benitez the unimpeded opportunity to claim all the procedural due process to which he was constitutionally entitled. Section 1228 expressly provides that in carrying out the expedited removal procedures, the Attorney General shall provide that--

> (A) the alien is given reasonable notice of the charges and of the opportunity described in subparagraph (C);

(B) the alien shall have the privilege of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as the alien shall choose;

(C) the alien has a reasonable opportunity to inspect the evidence and rebut the charges;

(D) a determination is made for the record that the individual upon whom the notice for the proceeding under this section is served (either in person or by mail) is, in fact, the alien named in such notice;

(E) a record is maintained for judicial review; and

(F) the final order of removal is not adjudicated by the same person who issues the charges.

§ 1228(b)(4).  See also 8 C.F.R. § 238.1.  The statute further instructs that the Attorney General may not execute any final order of removal until 14 calendar days have passed from the date that such order was issued, unless waived by the alien, in order that the alien has an opportunity to apply for judicial review under 8 U.S.C. § 1252.  § 1228(b)(3).  Clearly the expedited statutory deportation scheme comports with the minimum requirements of due process pronounced by the Supreme Court in Kwong Hai Chew.  Thus, if INS complied with the statutory mechanism when deporting Benitez on July 2, 1997, such deportation complies with the standards of due process, and evidence of this prior deportation is admissible in this case.

The record indicates that Benitez was given notice of the charges against him by Agent Winfrey.  Agent Winfrey explained to Benitez that he had a right to contest the deportation at a hearing, and Benitez waived this right.  Finally, Benitez waived his 14-day stay of execution of the Final Removal Order, during which time, Benitez would have had an opportunity to raise any

10

opposition to the proposed deportation.  Following the waiver of the 14-day stay, Officer Darrell Russell served Benitez with a warrant of deportation, which was subsequently executed by Officer Alfredo Garza on July 2, 1997, near Laredo, Texas.  Clearly, this chain of events provided Benitez with ample constitutional protection.  Further, there is no evidence in the record that Benitez's waiver was anything other than knowing and voluntary.  Thus, the evidence of the prior deportation is admissible.

B

Under certain circumstances, an alien who is being prosecuted under § 1326 can assert a challenge to the underlying deportation order.  See United States v. Mendoza-Lopez, 481 U.S. 828, 839; 107 L.Ed. 2148, 2155 (1987).  In order successfully to collaterally attack a deportation order in a § 1326 prosecution, the alien must show (1) that the deportation hearing was fundamentally unfair, (2) that the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the deportation, and (3) the procedural deficiencies caused him actual prejudice.  See United States v. Palacios-Martinez, 845 F.2d 89, 91 (5th Cir. 1988);  Estrada-Trochez, 66 F.3d at 735; quoting United States v. Encarnacion-Galvez, 964 F.2d 402, 406 (5th Cir. 1992, cert. denied, 506 U.S. 945, 113 S.Ct. 391, 121 L.Ed.2d 299 (1992).[8]

---

[8]We note that our law is in accord with the majority rule. See, e.g., United States v. Paredes-Batista, 140 F.3d 367, 378 (2d Cir.), cert. denied 119 S.Ct. 143 (1998); United States v. Loaisiga, 104 F.3d 484, 487 (1st Cir.), cert. denied, 520 U.S. 127

The law is clearly established that a showing of actual prejudice is required to succeed in such a collateral attack. United States v. Encarnacion-Galvez, 964 F.2d 402, 409 (5th Cir. 1992); United States v. Santos-Vanegas, 878 F.2d 247, 251 (8th Cir. 1989); United States v. Espinoza-Farlo, 34 F.3d 469, 471 (7th Cir. 1994); United States v. Proa-Tovar, 975 F.2d 592, 595 (9th Cir. 1992)(en banc). "If [the alien] cannot make [a showing of prejudice], the deportation order may be used to establish an element of a criminal offence." Espinoza-Farlo, 34 F.3d at 471; see also United States v. Estrada-Trochez, 66 F.3d 733, 735 (5th Cir. 1995). A showing of prejudice means "there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported." Estrada-Trochez, 66 F.3d at 735;

---

(1997); United States v. Perez-Ponce, 62 F.3d 1120, 1122 (8th Cir. 1995); United States v. Espinoza-Farlo, 34 F.3d 469, 471 (7th Cir. 1994); United States v. Meraz-Valeta, 26 F.3d 992, 998 (10th Cir. 1994) (citations omitted); United States v. Proa-Tovar, 975 F.2d 592, 595 (9th Cir. 1992) (en banc) (citations omitted); Figeroa v. U.S. I.N.S., 886 F.2d 76, 78 (4th Cir. 1989); and United States v. Holland, 876 F.2d 1533, 1537 (11th Cir. 1989).

To be sure, in 1996, Congress effectively codified our reading of Mendoza-Lopez in 8 U.S.C. § 1326(d), which provides:

In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) of this section unless the alien demonstrates that:
(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
(2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
(3) the entry of the order was fundamentally unfair.

(Emphasis added.)

quoting <u>United States v. Encarnacion-Galvez</u>, 964 F.2d 402, 406 (5th Cir. 1992, <u>cert. denied</u>, 506 U.S. 945, 113 S.Ct. 391, 121 L.Ed.2d 299 (1992).  In short, "[i]f the defendant was legally deportable and, despite the INS's errors, the proceeding 'could not have yielded a different result,' the deportation is valid for purposes of section 1326." <u>United States v. Galicia-Gonzalez</u>, 997 F.2d 602, 603 (9th Cir. 1993) <u>quoting</u> <u>Proa-Tovar</u>, 975 F.2d at 595.

The record is clear that irrespective whether the alleged errors in the § 1228 proceeding occurred, Benitez would have been deported from the United States.  It is indisputable that Benitez was convicted of a theft over $1,500 for which the term of imprisonment was at least one year.  Such conviction constituted an aggravated felony under § 1101(a)(43)(G), and, therefore, he was "conclusively presumed to be deportable from the United States" under § 1228(c).  <u>See</u> <u>also</u> § 1227(a)(2)(A)(iii) ("any alien who is convicted of an aggravated felony at any time after admission is deportable").  Moreover, as an alien convicted of an aggravated felony, Benitez was also ineligible for any discretionary relief from removal.  § 1228(b)(5) ("no alien described in this section shall be eligible for any relief from removal that the Attorney General may grant in [her] discretion").  Consequently, in the light of the incontestable evidence against him, Benitez's deportation was a foregone conclusion.  <u>See</u> <u>Perez-Ponce</u>, 62 F.3d at 1122 (noting that absent a showing of prejudice, an alien convicted of an aggravated felony under § 1101(a)(43) "would have no chance

13

of winning an appeal" of deportation order); <u>Espinoza-Farlo</u>, 34 F.3d at 471–72 (noting same).  Thus, because he can show no prejudice resulting from any deficiencies in the § 1288 proceeding, Benitez cannot successfully collaterally attack his deportation.

C

In urging us to affirm the district court's judgment, Benitez raises an additional due process argument.  Benitez complains that the INS impermissibly functioned in both a prosecutorial and an adjudicative capacity during the § 1228 proceeding.  Benitez further contends that because the INS's federal budget is measured largely by the number of aliens it apprehends and deports, the INS has a fiscal interest in his deportation that infects the impartiality of the proceeding.  As a result, Benitez contends his administrative deportation was adjudicated by a biased tribunal, which amounts to the type of procedural error that is so fundamentally unfair that he need not show actual prejudice. <u>United States v. Mendoza-Lopez</u>, 481 U.S. 828, 839 n.17 (1987).

14

(1)

Benitez's first allegation of bias--that in enacting § 1228, Congress impermissibly commingled the prosecutorial and adjudicatory functions of the INS--is wholly devoid of merit. In the early case of Marcello v. Bonds, 349 U.S. 302, 311 (1955), the Supreme Court rejected the defendant's contention that his deportation hearing under 8 U.S.C. § 1252(b) was neither fair nor impartial because the special inquiry officer who conducted the proceeding was subject to the supervision and control of the INS:

> Petitioner would have us hold that the presence of this relationship so strips the hearing of fairness and impartiality as to make the procedure violative of due process. The contention is without substance when considered against the long-standing practice in deportation proceedings, judicially approved in numerous decisions in the federal courts, and against the special considerations applicable to deportation which the Congress may take into account in exercising its particularly broad discretion in immigration matters.

Similarly, in Withrow v. Larkin, 421 U.S. 35, 56 (1975), the Supreme Court held that "it is [] very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings." The Withrow Court further elaborated that the fact that the initial charge in an administrative proceeding is brought by the same agency who later adjudicates the matter is not, in and of itself, violative of due process. Id. at 58. Thus, the Supreme Court's precedent on this point is clear: we will not presume bias

15

from the mere institutional structure of the INS.  See Marine Shale Processors, Inc. v. U.S. E.P.A., 81 F.3d 1371, 1385 (5th Cir. 1996), cert. denied, 519 U.S. 1055 (1997).

To be sure, one INS officer compiled the allegations supporting Benitez's deportation (Jacobs), while another (Harrington) reviewed the record, and upon concluding by clear, convincing, and unequivocal evidence that Benitez was subject to deportation, ordered him removed from the United States.  Benitez, however, has pointed to no evidence that shows in carrying out these dual functions, the INS officers prejudged his case before all facts were known to them to the extent that minds were "irrevocably closed" to the possibility of him avoiding deportation.  See Baran, 57 F.3d at 446.  Absent this showing, we cannot say that the commingling of prosecutorial and adjudicative functions in a § 1228 proceeding poses a risk of impermissible bias.  See id. (citing Withrow, 421 U.S. at 47).

(2)

Additionally, we summarily reject Benitez's second charge of bias--that the INS purportedly has a pecuniary interest in his deportation.  Although the INS's congressional funding depends to some extent on its statistical workload in apprehending and deporting illegal aliens, this fact provides too tenuous an influence to warrant a presumption that the INS or its personnel had a direct personal, substantial, and pecuniary interest in Benitez's deportation.  Instead, the alleged pecuniary interest

16

here is of the type identified by the Supreme Court as being "so remote, trifling and insignificant that it may fairly be supposed to be incapable of affecting the judgment or of influencing the conduct of an individual" INS hearing officer. <u>Aetna Life Insurance Co. v. Lavoie</u>, 475 U.S. 813, 827 n.3 (1986) (citing <u>Tumey</u>, 273 U.S. at 531)).

## III

To conclude, we hold that the district court erred in granting Benitez's motion to suppress the evidence of his July 2, 1997 proceeding. The expedited deportation procedure established by § 1228 clearly comports with minimal due process requirements. Further, Benitez has failed to demonstrate that he can mount a successful collateral attack on the validity of the § 1228 proceeding. Nor has he shown that he was prejudiced by any deficiencies in the § 1228 proceeding.[9] Thus, the evidence of the prior deportation is admissible in Benitez's subsequent criminal trial, and the district court erred when it suppressed evidence thereof. As such, we REVERSE the judgment of the district court

---

[9]Benitez also argues that his administrative deportation was fundamentally unfair because no record was made of the § 1228 proceeding and his waiver of rights in the administrative proceeding was not knowingly and voluntarily entered. Neither of these alleged errors constitute structural errors in the § 1228 proceeding, however. In the light of our holding that Benitez has failed to show actual prejudice, we need not consider these arguments on appeal. <u>Encarnacion-Galvez</u>, 964 F.2d at 406 (citations omitted).

17

and REMAND the case for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.