Lanre **OGUNDIPE** Petitioner

v.

**U.S. DEPARTMENT OF HOMELAND SECURITY, et al Respondents**

No. 01–CV–4261.

United States District Court, E.D. Pennsylvania.

Oct. 24, 2003.

514

Joseph Hohenstein, Philadelphia, PA, Sandra Greene, York, PA, for Petitioner.

Seth Weber, Susan R. Becker, U.S. Attorney's Office, Philadelphia, PA, for Respondent.

Sandra L. Greene, York, PA, Pro se.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

#### A. Introduction

▇▇▇ Petitioner Lanre Ogundipe has filed a petition for writ of habeas corpus alleging violations of due process, and alleging that the government has failed to properly adjudicate his claims for relief.[1] "Federal courts retain jurisdiction under 28 U.S.C. § 2241(c) to decide habeas peti-

1. The U.S. Department of Homeland Security has replaced original respondent U.S. Immigration and Naturalization Service. Five other respondents will also be added to reflect new immigration agencies: the Department of Homeland Security's Director, Tom Ridge; the Bureau of Immigration and Customs Enforcement (BICE); BICE's local District Director, William Riley; the Bureau of Citizenship and Immigration Services (BCIS), and BCIS's local District Director, Evangelina Klepakis.

tions filed by criminal aliens subject to deportation or removal." *Beshli v. Dep't of Homeland Sec.,* 272 F.Supp.2d 514 (E.D.Pa.2003) (*See Chmakov v. Blackman,* 266 F.3d 210, 213 (3d Cir.2001)) ("Both the Supreme Court and this Court have determined that notwithstanding the provisions of AEDPA or IIRIRA, district courts retain jurisdiction to hear habeas petitions filed by aliens subject to deportation for having committed certain criminal offenses.") (citing *Zadvydas v. Davis,* 533 U.S. 678, 688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); *INS v. St. Cyr,* 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)). The scope of review of such claims is, however, limited to questions of law. *Catney v. INS,* 178 F.3d 190, 195 (3d Cir.1999)[*11] ("Following passage of AEDPA and IIRIRA, we no longer have jurisdiction to review a denial of discretionary relief to a criminal alien."); cf. *St. Cyr,* 533 U.S. at 312, 121 S.Ct. 2271 (noting that scope of review in habeas corpus cases is "far narrower" than that authorized by Administrative Procedure Act (citing *Heikkila v. Barber,* 345 U.S. 229, 236, 73 S.Ct. 603, 97 L.Ed. 972 (1953)).)

## B. Chronology

- Petitioner Lanre Ogundipe is a native and citizen of Nigeria who entered the United States on a student visa in December, 1982. This visa authorized him to remain in the United States until January 31, 1987.
- On October 17, 1986, Petitioner was convicted in the United States District Court for the Middle District of Louisiana of fraudulent acquisition and unauthorized use of a credit card in violation of 18 U.S.C. § 1029(a)(2), and conspiracy to violate 8 U.S.C. §§ 1341 and 1029. For these crimes, Petitioner was sentenced to three years in prison, five years of probation, and ordered to pay restitution.
- On November 2, 1986, Petitioner was convicted in Louisiana state court on three separate counts of issuing worthless checks, a crime for which Petitioner was sentenced to three years imprisonment.
- On November 1, 1989, Petitioner was deported back to Nigeria. The Immigration and Nationality Service ("INS") stated two reasons for his deportation: (1) he had violated immigration laws by staying beyond the time authorized on his visa; and (2) he had been convicted of two crimes involving moral turpitude (the state and federal Louisiana convictions for unauthorized use of a credit card and issuing worthless checks).
- After his deportation, Petitioner illegally re-entered the United States. On June 13, 1991, Petitioner was arrested in Decatur, Georgia on charges of theft by deception, financial transaction card fraud, forgery, and giving a false name to the police.
- On January 16, 1992, Petitioner was arrested for illegal re-entry after deportation. He was convicted of that crime in the United States District Court for the Northern District of Georgia on April 23, 1992.
- On November 21, 1992, Petitioner was deported for a second time back to Nigeria.
- One month after this second deportation, in December, 1992, Petitioner again illegally re-entered the United States through San Ysidro, California. .
- On August 26, 1993, Petitioner married his current wife, Victoria Adegbola Ogundipe, in Kalamazoo, Michigan. Ms. Ogundipe later became a lawful permanent resident and then a United States citizen.

- In 1997 and 1998, Petitioner applied to adjust his status to a lawful permanent resident, and also filed an Application for Permission to Reapply for Admission into the United States After Deportation or Removal.

- On September 21, 2000, Petitioner was convicted of bank fraud in violation of 18 U.S.C. § 1344(1) in the United States District Court for the Western District of Michigan. He was sentenced to twenty-one months imprisonment. This conviction constitutes an aggravated felony for purposes of the immigration laws pursuant to 8 U.S.C. § 1101(a)(43)(G) (theft involving loss in excess of $10,000).

- On November 16, 2000, the INS initiated the current deportation proceedings by issuing a Notice of Intent to Reinstate Prior Deportation Order, which became final on February 28, 2001.

- On February 26, 2001, the INS denied Petitioner's application for status as a lawful permanent resident, noting his multiple convictions and illegal re-entries after deportation. On the same day, the INS denied Petitioner's Application for Admission to the United States after deportation, noting that he is inadmissible because (1) he is an alien convicted of a crime involving moral turpitude; (2) he has a conviction record with aggregate sentences in excess of five years; and (3) he has illegally re-entered the country. An Immigration Judge in Oakdale, Louisiana, denied Petitioner's motion to reopen his immigration proceedings on October 2, 2001.

- Petitioner filed the petition for writ of habeas corpus before this Court on August 21, 2001.

- Petitioner also filed his formal request for CAT relief (the Application for Asylum and Withholding of Removal) in 2001 (the date indicated on the proposed order accompanying that application.) This document is included as part of the record and was submitted as an accompanying exhibit to the Government's Response in Opposition to Petitioner's Writ of Habeas Corpus.

- On March 12, 2003, the INS rescinded its Notice of Intent to Reinstate Prior Order of Deportation, and served Petitioner with a Notice of Intent to Place Petitioner in Administrative Removal Proceedings under § 238 of the Immigration and Nationality Act.[2]

- On April 3, 2003, Petitioner submitted an amended petition for writ of habeas corpus. He filed a second amended habeas petition on May 28, 2003, which adds to the first amended petition an accusation that the INS failed to follow appropriate administrative procedure.

- On September 16, 2003, I issued an order granting Petitioner's Motion for Stay of Removal.

## C. Discussion

■ 1. *Due Process.* Petitioner's due process challenge to his removal proceedings is fourfold.

First, Petitioner argues that he failed to receive due process because the prosecutor and judge in his administrative removal process were the same person, Joseph Sallemi. 8 C.F.R. § 238.1 prohibits the Issuing Service Officer and Deciding Service Officer in removal proceedings to be the

---

**2.** The Immigration and Nationality Act (INA) corresponds to 8 U.S.C. §§ 1101–1537. Although the regulations and case law refer to them interchangeably, for clarity, I will use the U.S.Code designations throughout this opinion. However, when discussing INS procedures (such as "212(h) waiver," which refers to § 212(h) of the INA) I will use the standard terms used in the field.

same person. The INS acknowledged this problem and rectified it by having another officer, the Interim Deputy Field Office Director, review Petitioner's file and sign the final administrative order. As of the date of that correction, June 16, 2003, the order is fully compliant with the regulations.

■ Second, Petitioner complains that the expedited removal process itself that the government used to facilitate his case violates his right to due process. The government's use of the expedited removal process was proper. As reflected in the Chronology, the government previously sought deportation of Petitioner by simply reinstating a prior deportation order. On March 12, 2003, the government rescinded the notice and served Petitioner with notice to proceed under expedited removal proceedings set out in 8 C.F.R. § 238.1 (2003):

An Issuing Service Officer shall cause to be served upon an alien a Form I–851, Notice of Intent to Issue a Final Administrative Deportation Order, if the officer is satisfied that there is sufficient evidence, based upon questioning of the alien by an immigration officer and upon any other evidence obtained, to support a finding that the individual:

(i) is an alien;

(ii) has not been lawfully admitted for permanent residence, or has conditional permanent resident status under section 216 of the Act;

(iii) has been convicted ... of an aggravated felony and such conviction has become final; and

(iv) is deportable under section 237(a)(2)(A)(iii) of the Act, including an alien who has neither been admitted nor paroled, but who is conclusively presumed deportable under section 237(a)(2)(A)(iii) by operation of section 238(c) of the Act.

Petitioner meets each of the four requirements of the regulation:

(i) Petitioner is an alien;

(ii) Petitioner has not been lawfully admitted for permanent resident status.

(iii) Petitioner's conviction for bank fraud on September 21, 2000, constitutes an aggravated felony for purposes of the immigration laws pursuant to 8 U.S.C. § 1101(a)(43)(G) (theft involving loss in excess of $10,000).

(iv) Petitioner is deportable. "Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(2)(A)(iii).

Petitioner argues that the expedited removal process violates due process, both in general and as applied to Petitioner. Case law has approved the expedited removal process as constitutional. *United States v. Benitez–Villafuerte*, 186 F.3d 651, 657–8 (5th Cir.1999); *Bamba v. Elwood*, 252 F.Supp.2d 195, 204 (E.D.Pa.2003); *Marcelus v. INS*, 2002 WL 80301, at *1 (E.D.Pa. Jan. 16, 2002). Petitioner argues that his own expedited removal process can be distinguished from those discussed by the government because aliens in other expedited removal cases did not have family equities. While Petitioner's family equities are certainly sympathetic and unfortunate, there is no discretionary relief available in expedited removal proceedings. 8 U.S.C. § 1228(B)(5) ("No alien described in this section ("Expedited removal of aliens convicted of committing aggravated felonies") shall be eligible for any relief from removal that the Attorney General may grant in the Attorney General's discretion.")

■ Third, Petitioner claims that he has not had an opportunity to review the evi-

dence against him as required by 8 C.F.R. § 238.1(b) (2003). The evidence required to remove Petitioner consists of (1) his status as an alien, (2) that he has not been lawfully admitted for permanent residence, (3) that he has been convicted of an aggravated felony, and (4) that he is deportable. 8 C.F.R. § 238.1. As discussed above, Petitioner meets each of these requirements. There is no showing that Petitioner is unaware of these facts which prove this, or that he has been denied counsel or the opportunity to rebut these charges. *See Benitez–Villafuerte,* 186 F.3d at 659 [3]; *see also Marcelus v. INS,* 2002 WL 80301 at \*1 (finding in a similar § 1228 removal review that the procedure comported with due process: "There is no showing that petitioner was not timely informed of the charge, was denied counsel or denied the opportunity to rebut the charge. There is no showing or suggestion that petitioner had not in fact been convicted of an aggravated felony or that the conviction had been set aside.")

■ Fourth, Petitioner complains that the government's decisions do not reflect any consideration of his family's hardship should he be deported. He contends that he is eligible for a permanent resident visa with his waiver of inadmissibility (212(h)) application. The Attorney General may, in his discretion, waive an alien's inadmissibility due to a crime involving moral turpitude. 8 U.S.C. § 1182(h). The govern-

ment declined to review Petitioner's 212(h) application, claiming that such review is discretionary. The plain language of 8 U.S.C. § 1182(h) forbids this Court from reviewing the use of this discretion. Furthermore, even if the Attorney General had granted a 212(h) waiver to Petitioner, Petitioner would still be inadmissible under another provision of § 1182. An alien who has been ordered removed under § 240 of the INA or any other provision of law and who seeks admission within 20 years of the date of such alien's departure or removal in the case of a second or subsequent removal or at any time in the case of an alien convicted of an aggravated felony is inadmissible. 8 U.S.C. § 1182(a)(9)(a)(ii). Petitioner has twice been removed from the United States, and has been convicted of an aggravated felony. He is therefore inadmissible.

■ *2. Review of adjustment of status.* Petitioner argues that he is entitled to have an INS review of his application for adjustment, maintaining that it has been pending since 1997. He seeks to proceed with adjustment of status under 8 U.S.C. § 1255(i). However, this law does not provide relief from removal for Petitioner. According to § 1255(i)(2)(A), "the Attorney General may adjust the status of the alien to that of an alien lawfully admitted for permanent residence *if the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence* " (emphasis added). Again,

---

**3.** In addition to holding that the expedited removal process comports with due process, *Benitez–Villafuerte* discusses why any errors in the § 1228 proceeding are ultimately irrelevant: "The record is clear that irrespective whether the alleged errors in the § 1228 proceeding occurred, Benitez would have been deported from the United States. It is indisputable that Benitez was convicted of a theft over $1,500 for which the term of imprisonment was at least one year. Such conviction constituted an aggravated felony under

§ 1101(a)(43)(G), and, therefore, he was 'conclusively presumed to be deportable from the United States' under § 1228(c). *See also* § 1227(a)(2)(A)(iii) ('any alien who is convicted of an aggravated felony at any time after admission is deportable'). Moreover, as an alien convicted of an aggravated felony, Benitez was also ineligible for any discretionary relief from removal. § 1228(b)(5) ('no alien described in this section shall be eligible for any relief from removal that the Attorney General may grant in [her] discretion')."

because of Petitioner's aggravated felon status and his two illegal re-entries after deportation, he is ineligible to receive an immigrant visa or admissible for permanent residence. Furthermore, the INS already denied Petitioner's adjustment of status application in February of 2001.[4]

3. *Review of Petitioner's CAT relief claim.* Petitioner has raised the claim that his request for referral to an immigration officer under the Convention Against Torture ("CAT") has not been granted. The government responds that Petitioner "has chosen to forego this opportunity" and further that his earlier two deportations to Nigeria did not result in him being subjected to torture or detainment, thus making the likelihood of his being granted this relief minimal. Petitioner has not abandoned his efforts to pursue CAT relief, but rather has detailed his fears of persecution upon his return to Nigeria in the appropriate form, his Application for Asylum and Withholding of Removal, which has been submitted to the Department of Justice.[5] Furthermore, Petitioner's counsel informed this Court in a letter on May 28, 2003, that Petitioner wished to have his CAT claim adjudicated either after or concurrent to his adjustment claim.[6] There is no ambiguity about Petitioner's wish to seek relief under CAT. Pursuant to the regulations of 8 C.F.R. §§ 208.31 and 241.8(d), I will refer Petitioner to an INS asylum officer for a "reasonable fear" interview and assessment.[7]

**ORDER**

**AND NOW** this 24th day of October, 2003, it is **ORDERED** that Petitioner's claim under the Convention Against Torture Act should be adjudicated according to the provisions of 8 C.F.R. § 208.16.

4. In that INS decision, as I have done here, the agency explained that Petitioner is ineligible for adjustment of status for three reasons under the Immigration and Nationality Act: (1) because he is an alien convicted of a crime involving moral turpitude; (2) because of his aggregate sentences in excess of five years; and (3) because he had re-entered the United States after deportation, without authorization. Petitioner complains that he never received a copy of this INS decision, but this seems to be of little consequence at this point.

5. In this Petition, Petitioner claims to "fear persecution and torture in Nigeria due to [his] social group status as a deportee from the United States, an asylum seeker from Nigeria and [his] membership in ODD Fellowship, a religious group." He further claims that his father, also a member of this fellowship, was killed under "suspicious circumstances" in either 1979 or 1999 (both dates are indicated on the document; obviously one is incorrect). If Petitioner's father was in fact killed because of his association with this fellowship as recently as 1999, the government's argument that Petitioner's stated fears are unreasonable because he was previously deported in 1989 and 1992 without incident, appears unsupportable.

6. *See* letter attached to this Order.

7. In the recent decision of *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 222 (3d Cir.2003), the Third Circuit held that CAT claims are cognizable under 28 U.S.C. § 2241, and that district courts therefore have discretion to review CAT determinations. This holding reaffirmed that a district court discretion includes the ability to order a reasonable fear determination under the same law.

520

# Nationalities Service Center

1300 Spruce Street, Philadelphia, PA. 19107-5812
Phone: 215-893-8400, E-mail: info@nationalitiesservice.org,
Fax: 215-735-9718, Web site: http://NationalitiesService.org

**Executive Director**

JEANNE McGUIRE, ESQ.

**Officers**

BRUCE NICHOLS
Chair
JUAN TORRES
1ST Vice Chair
KAREN BUCK, ESQ.
2nd Vice Chair
LORLE WOLFSON
Secretary
MARK SOBEL
Treasurer

**Board of Trustees**

Zerihun Belay
Joseph B. Eastman
Andrew F. Erba, Esq.
Criswell C. Gonzalez
Beijoohy Halgazian
Margaret Harris
Frederick G. Higham
Cheryl Kuchler
Thomas F. McCallum
William W. Mezger
Georgette Miller, Esq.
Dr. Gabriel Ross
Mark J. Smith, Esq.
Richard Steel, Esq
William A. Stock, Esq
Stanley L. Straughter

**Advisory Council**

Cynthia Batt, Esq.
Hon. Jannie L. Blackwell
Mark Malloch Brown
Valerie Ferguson
Dr. Arancha Garcia Del Soto
Florence Ward Garvin
Lazar Kleit
Hon. James Kenny
Leslie Laird Kruhly
Margaret Lonzetta
Thomas Mahoney
Eva Plaza, Esq.
Hazami Sayed
David & Ligia Slovic
Dr. Shalom Staub

**Solicitor**

Brad Cooper

May 28, 2003

Clerk of Court
District Court for the Eastern District of Pennsylvania
600 Market Street, 16th Floor
Philadelphia, PA 19106

> Re:   Ogundipe v. Ashcroft, 02-CV-4261
>        Honorable Anita Brody

Dear Judge Brody:

I am writing to update you on the most recent actions in this matter. I visited my client on May 23rd at Berks County Prison. When I discussed filing a CAT claim and pursuing that claim as I had discussed with Ms. Becker Mr. Ogundipe indicated that an application form had been completed and filed with the original Petition to this Court. I examined the record and found that a form I-589 Application for Asylum and Withholding of Removal, the form used for CAT claims, had been included with the original Petition.

Mr. Ogundipe expressed the desire to proceed on the adjustment of status claims in this Court at this time. He wishes to have the CAT claim adjudicated after the adjustment issue or in concurrent to the adjustment in a proceeding in Immigration Court. At this time, he has instructed me to request that the government reply to the Amended Complaint filed on April 3rd within 15-30 days. With this letter I am communicating that request to Ms. Becker.

In addition, Mr. Ogundipe raised an issue, that he set forth in his most recent filing to the 3rd Circuit, regarding the government's lack of compliance with regulations in issuing its administrative removal order. Both the issuing officer and the deciding officer in Mr. Ogundipe's case were the same person, Deputy Assistant District Director Joseph Salemi. That is not permissible under the regulations. See, 8 C.F.R. 238.1 and 239.1. This is additional evidence of the government's prejudice in this matter, an issue which was raised on pages 5 and 6 of the Memorandum of Law in Support of the Amended Complaint. I am submitting a short amendment on that issue.

A United Way
Agency

Serving immigrants and refugees to the Delaware Valley since 1921

WE ARE WHAT WE WERE     WE ARE WHAT WE ARE BECOMING     MANY TRADITIONS, ONE NATION

At this time, I have informed Mr. Ogundipe that the Court may or may not grant his request to proceed solely on the adjustment of status claim at this time while reserving the CAT claim for a future Immigration Court proceeding. It is my opinion that the two claims are distinct and that the adjustment issue is clearly in front of this Court while the CAT claim does not need to be resolved prior to moving forward.

Thank you for your attention. I look forward to hearing from you with respect to how the Court wishes to proceed at this time.

Sincerely,

Joseph C. Hohenstein, Esq.
Cc: Susan Becker, Esq., A.U.S.A.
Enc.