# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 19-50182

———————

United States Court of Appeals
Fifth Circuit

**FILED**

December 13, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellant

v.

UVALDO RAMIREZ-CORTINAS, also known as Javier Martinez, also known as Ubaldo Cortinas Ramirez, also known as Uvaldo Cortinas Ramirez,

Defendant - Appellee

———————

Appeal from the United States District Court
for the Western District of Texas

———————

Before CLEMENT, ELROD, and DUNCAN, Circuit Judges.

STUART KYLE DUNCAN, Circuit Judge:

The United States appeals the district court's dismissal of a 2018 indictment charging Appellee Uvaldo Ramirez-Cortinas ("Ramirez") with illegal reentry in violation of 8 U.S.C. § 1326. We reverse and remand.

I.

A.

Ramirez is a Mexican citizen who has illegally entered the United States at least six times since 1998. In 2003, he was convicted of a felony hit-and-run in Texas. In 2008, after being charged with sexually abusing his 10-year-old stepdaughter, he was released on bail but failed to appear. He was convicted

No. 19-50182

of bail jumping in violation of Texas Penal Code § 38.10(f) and sentenced to seven years in prison.[1] After his release in 2012, Ramirez was issued a Notice to Appear for deportation proceedings. The notice declared him deportable for two reasons: being convicted of a "crime involving moral turpitude" and being "present in the United States without being admitted or paroled." *See* 8 U.S.C. §§ 1227(a)(1)(B), 1182(a)(2)(A)(i)(I), 1182(a)(6)(A)(i).

Thus began a series of four hearings before two immigration judges. At the first hearing, in October 2012, Ramirez was given two months to find counsel. At the second hearing, without counsel,[2] Ramirez admitted to the allegations in the Notice to Appear, and the IJ found him deportable. Ramirez asked whether there was "some type of relief" available. The IJ gave him an asylum application—because Ramirez said he was uncertain whether he would be in danger in Mexico—and continued the proceedings. At the third hearing, the IJ scheduled yet another hearing to consider Ramirez's asylum request.

The final hearing was in March 2013. Ramirez informed the IJ he did not "have all the documents," suggested he might withdraw his asylum request, and asked if he could instead have voluntary departure.[3] The IJ stated he would not grant voluntary departure, and later told Ramirez his bail jumping conviction was "an aggravated felony" that made him ineligible for voluntary departure. In light of this, the IJ asked Ramirez if he wanted "to have [the] hearing on [his] application for asylum." The IJ explained that, otherwise, he would order Ramirez deported. Ramirez sought more time, but

---

[1] According to Ramirez, the sexual abuse charges were dismissed because his step-daughter recanted.

[2] Ramirez never obtained counsel for any of these hearings.

[3] The first few times that Ramirez was found in the United States, between 1998 and 2001, authorities allowed him to return to Mexico voluntarily rather than face forcible removal.

the IJ denied that request. Later in the hearing, when Ramirez again suggested he wanted to withdraw the asylum request, the IJ declared he was going to order Ramirez deported. The IJ then asked if Ramirez wanted to appeal that decision. When Ramirez answered affirmatively, the IJ said, "Then, sir, we're going to have a hearing[.]"

The IJ proceeded to question Ramirez about his "very detailed" asylum application. Specifically, the IJ asked Ramirez if he was "afraid to return to Mexico." Ramirez answered, "I can't say yes or no." When asked whether anything violent had happened to him in Mexico, Ramirez answered "No." Ramirez also stated that nobody had threatened to harm him or his parents in Mexico. Ramirez testified only that he was forced to pay bribes to government officials, and that someone stole his family's cattle. The IJ subsequently asked Ramirez whether somebody had beaten him up. Ramirez said it was a group called "Preventiva, the police," but then explained he did not "think they . . . still exist." He also testified he had no problems because of his father's union activity, although his father may have had some problems when Ramirez "was a kid." The IJ then asked whether Ramirez or his family "had any problems in Mexico because of their religion," which was Jehovah's Witness. Ramirez responded, "No, not that I know of." The IJ asked Ramirez one last time, "[W]hat do you think would happen to you if you return to Mexico?" Ramirez responded, "I don't know." Eventually, the IJ informed Ramirez: "[Y]our feelings about the inadequacy of your application for asylum, the sufficiency of your application, were good because based on what you told me, you don't have a claim to asylum or withholding of removal."

Ultimately, the IJ decided that Ramirez's bail jumping conviction was an aggravated felony. *See generally* 8 U.S.C. § 1101(a)(43) (defining "aggravated felony"). That rendered Ramirez ineligible for asylum and "statutorily ineligible for withholding of removal under the Immigration and Nationality

No. 19-50182

Act and under the United Nations Convention against Torture."[4] This led the IJ to conclude that Ramirez's "only form of relief . . . would be deferral of removal based upon his belief that he will be tortured by the government officials in Mexico" or that those officials would knowingly allow his torture. But the IJ found Ramirez had failed to establish any such threat. Similarly, the IJ explained that "even if [Ramirez] was eligible for asylum or withholding, he would still be found to have failed to establish his burden because he does not establish past persecution or future persecution, and a reasonable person in his circumstance would not fear persecution or torture." Finally, the IJ explained that, even "had [Ramirez] been currently eligible for voluntary departure, [the IJ] would have denied voluntary departure as a matter of discretion because of [Ramirez's] criminal record, which is a serious one involving two felony offenses."

Ramirez appealed to the Board of Immigration Appeals ("BIA"), arguing the IJ erred in finding he had been convicted of an aggravated felony. The BIA dismissed Ramirez's appeal in a written decision. The BIA agreed with the IJ that Ramirez's bail jumping conviction was "both an aggravated felony and a particularly serious crime," rendering him ineligible for asylum, withholding of removal, and voluntary departure. The BIA incorrectly stated, however, that Ramirez did not dispute on appeal that he had been convicted of "an offense that is an aggravated felony and also a particularly serious crime." Finally, the BIA agreed with the IJ that Ramirez failed to show he would likely be tortured by, or at the behest of, Mexican officials.

---

[4] An alien is ineligible for asylum or withholding of removal if he has been convicted of a "particularly serious crime," which includes "aggravated felonies." 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1158(b)(2)(B)(i), 1231(b)(3)(B)(ii), 1231(b)(3)(B).

No. 19-50182

The BIA denied relief on July 24, 2013, and mailed its decision the same day. Ramirez was deported to Mexico a week later, on August 2, 2013. For reasons unexplained in the record, the BIA's decision was not received at the immigration court adjacent to the facility where Ramirez had been detained until December 10, 2013—four months after his deportation. Ramirez did not appeal the BIA's decision.

B.

In 2018, Ramirez was arrested in Texas and charged with illegal reentry in violation of 8 U.S.C. § 1326. He moved to dismiss the indictment under § 1326(d), which permits collateral attack on the underlying deportation order under certain circumstances. *See id.* § 1326(d)(1)–(3) (collateral attack permitted only if (1) alien exhausted administrative remedies, (2) he lacked "opportunity for judicial review," and (3) his deportation order was "fundamentally unfair"); *see also, e.g., United States v. Benitez-Villafuerte*, 186 F.3d 651, 658 (5th Cir. 1999) (alien must also show "actual prejudice" to satisfy § 1326(d)). The district court found all the collateral attack requirements met.[5] Specifically, because the BIA erroneously thought Ramirez did not dispute that bail jumping was an aggravated felony, the court concluded the proceedings deprived him of judicial review and were fundamentally unfair. The court also concluded that the IJ and BIA incorrectly determined that bail jumping was an "aggravated felony" under the Immigration and Nationality Act. *See generally* 8 U.S.C. § 1101(a)(43)(A)–(U). The court concluded this error "actually prejudiced" Ramirez because it led the IJ not to consider his claims for asylum and withholding of removal, "which might have prevented

---

[5] The district court concluded, and the government does not contest, that Ramirez exhausted all available administrative remedies. *See* 8 U.S.C. § 1326(d)(1).

No. 19-50182

[Ramirez's] ultimate deportation."[6] The court therefore dismissed Ramirez's illegal-reentry indictment.

The government timely appealed. In May 2019, while the government's appeal was pending, Ramirez was deported.[7]

## II.

We review a district court's dismissal of an indictment *de novo*. *United States v. Parrales-Guzman*, 922 F.3d 706, 707 (5th Cir. 2019).

## III.

On appeal, the government contends that the district court erred in sustaining Ramirez's collateral attack on his underlying 2013 deportation order and dismissing the 2018 illegal-reentry indictment. We agree and therefore reverse the district court's judgment dismissing the indictment.

Section § 1326(a) makes it a crime for certain aliens who have been previously deported from the United States to reenter the country unlawfully. 8 U.S.C. § 1326(a). An alien charged under § 1326(a) may collaterally attack the validity of the underlying deportation order only by showing that:

**(1)** the alien exhausted any administrative remedies that may have been available to seek relief against the order;

**(2)** the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

**(3)** the entry of the order was fundamentally unfair.

*Id.* § 1326(d); *see also United States v. Mendoza-Lopez*, 481 U.S. 828, 838–39

---

[6] The district court did not consider denial of Ramirez's application for voluntary departure prejudicial because the IJ stated he "would have denied voluntary departure as a matter of discretion."

[7] At oral argument, Ramirez's counsel conceded that our recent decision in *United States v. Pedroza-Rocha*, 933 F.3d 490 (5th Cir. 2019), means that his deportation does not moot the government's appeal.

(1987). Moreover, "[t]he law is clearly established that a showing of actual prejudice is required to succeed in such a collateral attack." *Benitez-Villafuerte*, 186 F.3d at 658 (and collecting decisions); *see also, e.g.*, *United States v. Villanueva-Diaz*, 634 F.3d 844, 852 (5th Cir. 2011) (same). "A showing of prejudice means there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported." *Benitez-Villafuerte*, 186 F.3d at 658–59 (internal quotations and citation omitted). As indicated, the district court found each of these requirements met, including actual prejudice, in dismissing Ramirez's illegal-reentry indictment.

On appeal, the government attacks the district court's dismissal on two grounds. First, the government argues the district court erred in finding the 2013 deportation proceedings "effectively eliminated" Ramirez's right to challenge his deportation "by means of judicial review." *See* 8 U.S.C. § 1326(d)(2). Second, the government argues that, regardless, Ramirez failed to demonstrate the "actual prejudice" required by our precedent. We need not reach the government's first argument because we conclude that the district court erred in finding actual prejudice.

The district court found that the IJ and the BIA erroneously classified bail jumping as an aggravated felony under the Act.[8] This error, the district court reasoned, led the IJ not to consider Ramirez's claims for asylum and withholding of removal. And this in turn "actually prejudiced" Ramirez

---

[8] Specifically, the court concluded that bail jumping under Texas Penal Code § 38.10(f) could not qualify as an "aggravated felony" under either subsection Q or T of 8 U.S.C. § 1101(a)(43) because the elements of the Texas crime are not a "generic categorical match" with the crimes defined in those subsections. We do not consider whether the district court was correct because, as explained below, Ramirez could not show actual prejudice even assuming the IJ and BIA erred on this point.

because consideration of those claims "might have prevented his ultimate deportation." We disagree with the district court for two reasons.

First, the district court diluted the actual-prejudice standard. Under our cases, Ramirez bore the burden of showing that "there was a reasonable likelihood that but for the errors complained of [he] would not have been deported." *Benitez-Villafuerte*, 186 F.3d at 659 (internal quotations and citation omitted); *accord United States v. Cordova-Soto*, 804 F.3d 714, 719 (5th Cir. 2015); *Villanueva-Diaz*, 634 F.3d at 852; *United States v. Mendoza-Mata*, 322 F.3d 829, 832 (5th Cir. 2003). The district court applied a lower prejudice standard, however. The court reasoned that—had the IJ and BIA not erred in classifying bail jumping as an aggravated felony—Ramirez's asylum and withholding claims "*might have prevented* [Ramirez's] ultimate deportation." Our precedents demand a more robust prejudice showing.

We have emphasized that prejudice under § 1326(d) "means there was a reasonable likelihood that but for the errors complained of the defendant *would not have been deported.*" *Benitez-Villafuerte*, 186 F.3d at 659 (emphasis added) (internal quotations and citation omitted). If "despite the [alleged] errors, the proceeding could not have yielded a different result, the deportation is valid for purposes of section 1326." *Id.* at 659 (internal quotations and citation omitted); *see also, e.g.*, *Rosales v. Bureau of Immigration & Customs Enf't*, 426 F.3d 733, 737 (5th Cir. 2005) (failure to inform petitioner of consular rights did not prejudice him given "no showing that [such] assistance . . . would have changed the result of the hearing"). So, for example, if an alien claims he is eligible for asylum, but "nothing in the record . . . even remotely suggests . . . any grounds" for asylum, the alien fails to show prejudice. *United States v. Encarnacion-Galvez*, 964 F.2d 402, 410 (5th Cir. 1992). In sum, the district court's conclusion that Ramirez "might" not have been deported absent the

alleged error is "far too slender a reed to support a showing of prejudice" under § 1326(d).[9] *Id.*

Second, applying the correct actual-prejudice standard, the record forecloses any notion that Ramirez likely would have escaped deportation either through asylum or withholding of removal. We therefore cannot affirm the district court's dismissal of the indictment on alternative grounds. *Cf. United States v. Real Prop. Located at 14301 Gateway Blvd. W.*, 123 F.3d 312, 313 (5th Cir. 1997) (explaining that "we will not reverse a judgment of the district court if it can be affirmed on any ground"). Asylum is available to "an alien who is unable or unwilling to return to his home country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1101(a)(42)(A)). "Withholding of deportation involves a slightly different analysis. To be eligible for such relief, the alien must demonstrate a 'clear probability' of persecution upon return." *Faddoul v. INS*, 37 F.3d 185, 188 (5th Cir. 1994) (quoting *Rivera-Cruz v. INS*, 948 F.2d 962, 966 (5th Cir. 1991)); *see* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16. The record leaves us no doubt that Ramirez would not have obtained relief on either basis. For instance, after questioning Ramirez in detail about his application, the IJ told him that "your feelings about the inadequacy of your application for asylum, the sufficiency of your application, were good because based on what you told me, you don't have a claim to asylum or withholding of removal." And in its order the IJ found that "even if [Ramirez]

---

[9] Elsewhere in its opinion, the district court articulated the prejudice inquiry as whether any error "improperly deprived [Ramirez of] due consideration of the discretionary relief he sought." This also dilutes the actual-prejudice standard. The inquiry is not whether an alien was denied "due consideration" of the relief sought, but whether, absent error, he likely "would not have been deported." *Benitez-Villafuerte*, 186 F.3d at 658–59.

was eligible for asylum or withholding, he would still be found to have failed to establish his burden because he does not establish past persecution or future persecution, and a reasonable person in his circumstance would not fear persecution or torture." Most pointedly, when the IJ asked Ramirez if he "was afraid to return to Mexico," Ramirez candidly answered, "I can't say yes or no." Ramirez could not articulate even a subjective fear of persecution, much less a well-founded one. We see nothing in the record indicating that Ramirez was likely eligible for asylum or withholding of removal.

Therefore, even assuming the IJ and BIA erred in classifying Ramirez's bail jumping conviction as an aggravated felony (something we do not decide), Ramirez still could not show actual prejudice under § 1326(d). Consequently, the district court erred in dismissing Ramirez's indictment for illegal reentry.

REVERSED AND REMANDED.